**CITY OF PHILADELPHIA, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (Reed), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 21, 2001.

Decided Oct. 29, 2001.

_____

Martin G. Malloy, Philadelphia, for petitioner.

Jack Famiglietti, Philadelphia, for respondent.

Before DOYLE, President Judge, McGINLEY, J., and McCLOSKEY, Senior Judge.

McCLOSKEY, Senior Judge.

The City of Philadelphia (Employer), petitions for review of a determination of the Workers' Compensation Appeal Board (Board), affirming the decision of a Workers' Compensation Judge (WCJ), which denied Employer's termination petition regarding Joseph S. Reed's (Claimant) receipt of benefits. We affirm.

Claimant sustained a work-related injury described as a cervical and left shoulder sprain on September 5, 1991, while employed as a firefighter by Employer. A supplemental agreement was executed on October 14, 1991, providing that Claimant would be paid wages in lieu of compensation from September 5, 1991, until June 18, 1992. As of June 18, 1992, Claimant was to be paid weekly compensation at a rate of $436.00 and was to receive all past due compensation to be paid at ten percent per annum. On May 21, 1995, Employer filed a termination petition alleging that Claimant had fully recovered from his work injury. Claimant denied the allegations.

In support of its petition, Employer presented the deposition testimony of John T. Williams, M.D., board certified in orthopedic surgery, who evaluated Claimant on February 1, 1993. Dr. Williams testified that an examination of Claimant's knee revealed one plus grading on the right and two plus grading on the left. (R.R. at 20a). Dr. Williams further testified that all neurological tests that he performed on Claimant were negative and the examination of Claimant's neck, upper extremities and lumbosacral spine were normal.[1] (R.R. at 22a–24a). Moreover, Dr. Williams believed that Claimant had incurred an acute cervical sprain/strain, an acute thoracolumbosacral sprain/strain and an acute sprain/strain of the left shoulder girdle, all of which had all resolved by the time of his examination. (R.R. at 24a). Dr. Williams testified that there were no positive, objective findings to correlate Claimant's complaints. Finally, Dr. Williams opined that Claimant was fully recovered from his work injury but that he would not recommend Claimant returning to work on the basis of degenerative joints, not because of Claimant's work-related injury.[2] (R.R. at 25a).

On cross-examination, Dr. Williams admitted that Claimant's work activities and work injury aggravated the degenerative process. (R.R. at 36a–37a). Additionally, Dr. Williams testified that there was no way to reverse degenerative changes once they have been aggravated. Moreover, Dr. Williams admitted that a MRI per-

_____

1. Dr. Williams testified that the results of Claimant's lumbosacral examination were normal with the exception of his knees. Dr. Williams diagnosed Claimant with condylomalacia of the patella. (R.R. at 24a).

2. Dr. Williams opined that Claimant's work injury aggravated his pre-existing pathology. Dr. Williams believed that Claimant's work injury had resolved but that his underlying pre-existing pathology continues. (R.R. at 29a–30a).

formed in 1991, revealed that Claimant suffered left side herniated nucleus pulposis at C–6 and C–7 and that EMG showed chronic radiculopathy at C–7. Finally, Dr. Williams admitted that he did not see that EMG but rather reviewed another physician's report and that he did not order any diagnostic tests himself. (R.R. at 38a–40a). Claimant failed to present any evidence on his own behalf.

By opinion and order dated July 31, 1997, the WCJ denied Employer's termination petition, concluding that Employer failed to meet its burden of proving that Claimant had fully recovered from his work injury. The WCJ specifically found Dr. Williams' testimony to be equivocal. Employer appealed. On February 1, 1999, the Board decided that Dr. Williams' testimony was unequivocal and remanded the matter to the WCJ for further findings regarding Dr. Williams' credibility.

On remand, the WCJ again denied Employer's termination petition, concluding that Employer failed to meet its burden of proof. Moreover, the WCJ made the following findings of fact:

18. Doctor Williams classified the Claimant's work as a heavy manual labor job, and he would not recommend that the Claimant return to such work activity, because of the Claimant's degenerative disease. This Judge notes that Doctor Williams' examination of the Claimant took place less than one and one-half years after the Claimant's injury, yet Doctor Williams relates the Claimant's disability to a long standing degenerative disease process, that is not related to the Claimant's work injury and Dr. Williams opined that the Claimant is fully recovered from his work injury of September 5, 199[1], but he restricts the Claimant from returning to his job as a firefighter, a job that the Claimant held for many years and a job that the Claimant was able to do with little lost time from work, until the September 5, 1991 injury.

19. This Judge finds that Dr. Williams['] testimony is not only less than credible, but it is unworthy of belief. It is obvious to this Judge, that Dr. Williams fulfilled his role as a witness for the Defendant in that he was instructed by the Defendant to perform an examination of the Claimant, not for the purpose of treating, but for the purpose of rendering an opinion that the Claimant was fully recovered from his work injury, and Dr. Williams carried out his role perfectly, in the face of the Claimant's work history, subjective complaints, a positive MRI and EMG.

20. This Judge excludes the May 17, 1993 report of Dr. Williams, as it is hearsay document, and therefor not admitted into the record.

(WCJ's Decision of 10/22/99, Findings of Fact Nos. 18–20, Exhibit C of Employer's Brief at 1–2). Thereafter, Employer appealed and the Board affirmed.

 On appeal to this Court, Employer argues that the Board erred in affirming the WCJ's decision because the WCJ capriciously disregarded the testimony of Employer's witness.[3] Additionally, Em-

---

**3.** The capricious disregard scope of review applies where only the burdened party presented evidence and has not prevailed before the factfinder. *Serrano v. Workers' Compensation Appeal Board,* 718 A.2d 885 (Pa.Cmwlth. 1998). The capricious disregard of competent evidence is the "willful, deliberate disbelief of an apparently trustworthy witness, whose testimony one has no basis to challenge." *Acme Markets, Inc. v. Workmen's*

ployer asserts that the Board erred by applying a substantial, competent evidence standard. Finally, Employer argues that the Board erred by failing to recognize the WCJ's bias against Employer's witness and mischaracterizing Dr. Williams' testimony. We disagree.

 Initially, we note that in a termination proceeding, the employer bears the burden of proving either that the claimant's disability has ceased or that any remaining disability arises from a non-work-related cause. *Jordan v. Workmen's Compensation Appeal Board (Consolidated Electrical Distributors)*, 550 Pa. 232, 704 A.2d 1063 (1997). The WCJ, as fact finder, has exclusive province over questions of credibility and a reviewing court is not to reweigh the evidence or review the credibility of witnesses. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703 (Pa.Cmwlth. 1995). Furthermore, a WCJ may accept or reject the testimony of any witness in whole or in part. *Id.*

In *Campbell v. Workers' Compensation Appeal Board (Antietam Valley Animal Hospital)*, 705 A.2d 503 (Pa.Cmwlth.1998), this Court discussed the application of the capricious disregard standard stating:

> In utilizing the capricious disregard standard, we first examine the record to determine whether the burdened party ... has met its burden as a matter of law; and, if not, we must affirm the agency's decision as a correct legal conclusion. Where ... the burdened party presents sufficient evidence as a matter of law, we then examine the basis for the adverse ruling and determine whether it stemmed from a specific credibility determination expressed by the factfinder against the burdened party or from the factfinder's error of law. In the latter

case, we can reverse the agency; in the former case, we may affirm on the basis that the burdened party met its burden of production but failed in its burden to persuade the factfinder.

*Campbell*, 705 A.2d at 507.

 Having reviewed the evidence in its entirety, we conclude that the Board properly affirmed the WCJ's decision in that the WCJ did not capriciously disregard the testimony of Employer's witness. Here, the WCJ made a specific credibility determination supporting his decision. Dr. Williams testified that there were no objective findings to correlate Claimant's complaints, yet Dr. Williams failed to order any diagnostic tests. Moreover, we believe that Finding of Fact No. 18 clearly shows the WCJ's reluctance to believe Dr. Williams and sufficiently sets forth the WCJ's legitimate reasons to reject his testimony. Thus, Employer clearly failed to persuade the fact finder. When Dr. Williams' testimony is discounted as not credible, Employer cannot sustain its burden of proof on its termination petition.

Next, Employer argues that the Board erred by applying a substantial, competent evidence standard. We disagree. The Board's opinion provides:

> We will therefore use the capricious disregard test. Our duty, then, is to determine whether the WCJ, without good reason, disregarded substantial competent evidence of Record. That is to say, we must look to see whether the WCJ's rejection of the evidence presented by the Defendant was arbitrary, inconsistent or unreasonable, or whether his reasons were frivolous or based upon whim. If so, we must reverse. If, on the other hand, his rejection of the testimony is based upon rational grounds,

*Compensation Appeal Board (Pilvalis)*, 142 Pa. Cmwlth. 400, 597 A.2d 294, 296 (1991).

articulated in the Decision, we must affirm.

(Board's Opinion of 10/22/99, Exhibit D of Employer's Brief at 3). Having compared the Board's explanation of the capricious disregard test to other caselaw, we believe that the Board did in fact apply the capricious disregard standard on appeal. *See Campbell,* 705 A.2d at 503 (where the burdened party presents sufficient evidence as a matter of law we must examine the basis for the adverse ruling); *Acme Markets,* 597 A.2d at 294 (the capricious disregard of competent evidence is the willful, deliberate disbelief of an apparently trustworthy witness); *Farquhar v. Workmen's Compensation Appeal Board (Corning Glass),* 515 Pa. 315, 528 A.2d 580 (1987). Furthermore, we believe that the Board's use of the word "substantial" in its explanation constituted harmless error since it is clear that the correct standard was applied in accordance with the law.

Finally, Employer argues that the Board erred in failing to recognize the WCJ's bias against Employer's witness. Specifically, Employer asserts that the WCJ's decision implies that Dr. Williams' testimony was "bought."

 Based on our review of the record, we perceive no such error. Employer's argument amounts to an attack on the WCJ's credibility determination. As noted above, questions of credibility are within the exclusive province of the WCJ and a reviewing court is not reweigh the evidence or review the credibility of witnesses. *Greenwich Collieries,* 664 A.2d 703. Thus, since it was within the WCJ's sole discretion to determine Dr. Williams' credibility, we are precluded from reviewing his determination. The fact that Employer is offended by the WCJ's choice of

words is simply not a sufficient reason to reverse the WCJ's decision.[4]

Accordingly, the order of the Board is hereby affirmed.

### *ORDER*

AND NOW, this 29th day of October, 2001, the order of the Workers' Compensation Appeal Board is hereby affirmed.

---

4. For the same reasons, we reject Employer's assertions that the Board mischaracterized Dr. Williams' testimony. This too is an impermissible attack on the WCJ's credibility determination.