**1912 HOOVER HOUSE RESTAURANT,**
Petitioner

v.

**WORKERS' COMPENSATION APPEAL BOARD (SOVERNS),**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted Aug. 29, 2014.
Decided Nov. 10, 2014.

Eugene N. McHugh, Harrisburg, for petitioner.

Bradley R. Bolinger, Chambersburg, for respondent.

BEFORE: RENÉE COHN JUBELIRER, Judge, and ROBERT SIMPSON, Judge, and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

1912 Hoover House Restaurant (Employer) petitions for review of the Order of the Workers' Compensation Appeal Board (Board) that affirmed the Workers' Compensation Judge's (WCJ) Decision granting Sean Soverns's (Claimant) Claim Petition. The WCJ concluded, in relevant part, that Claimant was injured during the course and scope of his employment when he sustained facial lacerations and permanent scarring when he was bitten by a co-worker's dog. On appeal, Employer argues that: (1) the WCJ's Decision is not reasoned; (2) the WCJ's findings of fact do not support the conclusion that Claimant was in the course and scope of his employment at the time he was injured; and (3) the WCJ erred by making this conclusion. Discerning no error, we affirm.

Claimant was primarily employed in the paint department of a manufacturer averaging 60–65 hours per week. (WCJ 2010 Decision, Findings of Fact (2010 FOF) ¶ 2.) Claimant was also employed part-time by Employer as a line cook one evening each week. (2010 FOF ¶ 1.) Claimant filed a Claim Petition on April 19, 2010 alleging that, as a result of being bitten by a co-worker's dog on March 16, 2010, he sustained facial lacerations in the course of his employment. (Claim Petition at 1, R.R. at 23a.) Claimant sought payment for disfigurement, medical bills, and counsel fees.

(Claim Petition at 2, R.R. at 24a.) Employer timely filed an answer denying that Claimant's injuries were sustained in the course and scope of his employment. (Employer's Answer to Claim Petition, R.R. at 26a–27a.) Hearings before the WCJ ensued.

In support of the Claim Petition, Claimant presented his own testimony and submitted photographs, medical records, and unpaid medical bills into the record. In opposition, Employer presented the testimony of its owner, Barbara Persun (Owner). Based on the evidence presented, the WCJ found as follows.

When Claimant arrived at work on March 16, 2010, he got the line going and reviewed the specials with the chef. (2010 FOF ¶ 3.) One of Claimant's coworkers stated that her father would be stopping by with her dog. (2010 FOF ¶ 3.) Claimant went outside to have a cigarette after the dog had arrived at the restaurant. (2010 FOF ¶ 4.) While on his smoke break, Claimant had a conversation with the coworker's father. (2010 FOF ¶ 4.) Claimant petted the dog and let the dog lick his face. (2010 FOF ¶ 4.) "When ... [C]laimant went to stand up, the dog growled and bit" Claimant's lower lip. (2010 FOF ¶ 4.)

Claimant was permitted to take smoke breaks "while he was working for [Employer]." (2010 FOF ¶ 6.) At the time of the incident, Claimant "was in an approved area where everybody smoked." (2010 FOF ¶ 5.) Employer "had supplied an ashtray tower for the employees' use." (2010 FOF ¶ 5.) Claimant was "approximately three [feet] away from the ashtray tower," and "was actually smoking a cigarette when he was bitten by the dog." (2010 FOF ¶¶ 5, 8.) Claimant testified that, "at the time he was bitten, there was no written or oral rule from [Employer] that prevented any employee from bringing a dog to the break area." (2010 FOF ¶ 7.) As a result of the dog bite, "[C]laimant has a permanent visible scar on the lower right ... part of his lower lip," and a second "permanent visible scar on the center part of his chin directly below his lower lip." (2010 FOF ¶ 11.) In addition, "[C]laimant missed six days of work" and "incurred numerous unpaid medical bills." (2010 FOF ¶ 13.)

Owner testified, in relevant part, that she was not present when Claimant's injury occurred. (2010 FOF ¶ 15.) Owner also testified that "employees are allowed two smoking breaks per shift," and that "[t]here is no exact amount of time that employees are allowed to be outside for their break." (2010 FOF ¶ 17.) In addition, Owner admitted that there was no employee handbook or posted list of rules notifying the employees what is required or expected of them. (2010 FOF ¶ 18.)

On December 2, 2010, the WCJ issued a Decision and Order granting the Claim Petition. The WCJ concluded that Claimant met his burden of proof and sufficiently established that he sustained an injury to his face on March 16, 2010, while in the course and scope of his employment, "resulting in serious, permanent, and unsightly disfigurement." (WCJ 2010 Decision, Conclusions of Law (2010 COL) ¶¶ 2–3.) Accordingly, the WCJ awarded Claimant 63 weeks of workers' compensation (WC) "benefits based on the permanent scarring of his lower lip and chin." (2010 COL ¶ 5.) In calculating Claimant's Average Weekly Wage (AWW), the WCJ accepted Employer's evidence that Claimant's AWW was $31 per week and Claimant's testimony that he earned $900 per week from his concurrent primary employment at the time of his injury. (2010 FOF ¶¶ 1–2; 2010 COL ¶ 4.) Therefore, the WCJ determined that Claimant's AWW was $931.00. (2010 COL ¶ 4.)

Employer filed a timely appeal to the Board. Employer argued that the WCJ erred in determining that Claimant was in the course and scope of his employment at the time of the injury. Employer also argued that the WCJ's disfigurement award exceeded the typical range for such injuries, and that there was not substantial evidence to base Claimant's AWW on concurrent employment. Upon review, the Board affirmed the WCJ's Order that Claimant was in the course and scope of his employment at the time of the injury and the WCJ's award of 63 weeks of WC benefits. (Board 2012 Op. at 5–8.) However, the Board concluded that the WCJ's findings regarding Claimant's AWW were not supported by substantial evidence. (Board 2012 Op. at 9–10.) Accordingly, the Board remanded the matter to the WCJ for the limited purpose of establishing and recalculating Claimant's AWW. (Board 2012 Op. at 10.)

On remand, the WCJ recalculated Claimant's AWW and restated the conclusion that Claimant had established that his March 16, 2010 injury was sustained in the course and scope of his employment. Accordingly, the WCJ again granted Claimant's Claim Petition by Decision and Order circulated November 9, 2012. (WCJ 2012 Remand Decision). Employer appealed the WCJ 2012 Remand Decision to the Board. The sole issue presented on appeal to the Board by Employer was wheth-er Claimant was in the course and scope of his employment when he suffered the March 16, 2010 injury. Because the Board had already addressed and affirmed the WCJ on this issue, the Board affirmed the WCJ 2012 Remand Decision. (Board 2014 Op. at 3.) Employer now petitions this Court for review.[1]

On appeal, Employer raises three issues: (1) whether the WCJ's findings of fact are so incomplete and limited that the WCJ's 2010 Decision is not reasoned; (2) whether the WCJ's findings support the conclusion that Claimant's actions were merely a temporary departure and furthered Employer's business interests; and (3) whether the WCJ's conclusion that Claimant was injured in the course and scope of his employment is contrary to well established case law.

In support of the first issue, Employer asserts that the WCJ's 2010 Decision is not reasoned because the findings do not incorporate all the evidence admitted into the record. Employer asserts that, pursuant to Section 422(a) of the Workers' Compensation Act (Act),[2] the WCJ is required to adequately explain the reasons for rejecting or discrediting competent evidence. Employer contends that the WCJ's 2010 Decision does not satisfy Section 422(a) because the WCJ failed: (1) to consider the "undisputed evidence and admissions by . . . Claimant that he left the premises

---

1. "This Court's scope of review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether errors of law were made, or whether constitutional rights were violated." *Peters Township School District v. Workers' Compensation Appeal Board (Anthony)*, 945 A.2d 805, 810 n. 8 (Pa.Cmwlth.2008). "Substantial evidence has been defined as such relevant evidence as a reasonable person might accept as adequate to support the conclusion." *Wells-Moore v. Workmen's Compensation Appeal Board (McNeil Consumer Products Co.)*, 144 Pa.Cmwlth. 382, 601 A.2d 879, 881 (1992).

"[T]he appellate role is not to reweigh the evidence or review the credibility of the witnesses," but to "determine whether, upon consideration of the evidence as a whole, the [WCJ's] findings have the requisite measure of support in the record." *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 531 Pa. 287, 612 A.2d 434, 437 (1992).

2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 834.

of the business without specific permission to pet the dog and the dog bite occurred in a public alley and parking lot area off the business premises;" and (2) to make a finding with respect to Claimant's admission "that he was warned not to pet the dog because the dog snapped at people." (Employer's Br. at 12–13.)

Under Section 422(a) of the Act, the WCJ must issue "a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decision . . . ." 77 P.S. § 834. However, "Section 422(a) does not require the WCJ to discuss all of the evidence presented." *Dorsey v. Workers' Compensation Appeal Board (Crossing Construction Company)*, 893 A.2d 191, 194 n. 4 (Pa.Cmwlth.2006). "The WCJ is only required to make the findings necessary to resolve the issues raised by the evidence and relevant to the decision." *Id.* Moreover, "[a] reasoned decision does not require the WCJ to give a line-by-line analysis of each statement by each witness, explaining how a particular statement affected the ultimate decision." *Acme Markets, Inc. v. Workers' Compensation Appeal Board (Brown)*, 890 A.2d 21, 26 (Pa.Cmwlth.2006).

We conclude, based on our review of the evidence presented and the WCJ's findings based on that evidence, that the WCJ's 2010 Decision is reasoned. By asserting that the WCJ should have made certain findings, Employer is essentially arguing that the WCJ should have weighed the evidence in its favor and found that Claimant was not in the course and scope of his employment because he was not on Employer's premises at the time Claimant was bitten by the dog. However, "[t]he WCJ, as fact finder, has exclusive province over questions of credibility and a reviewing court is not to reweigh the evidence or review the credibility of witnesses." *City of Philadelphia v. Workers' Compensation Appeal Board (Reed)*, 785 A.2d 1065, 1068 (Pa.Cmwlth. 2001). Here, the WCJ determined that Employer's premises included the break area where employees were regularly permitted to smoke cigarettes. (2010 FOF ¶ 5.) Owner did not contradict that Claimant was in the regular smoke break area, or that he was within three feet of the ashtray tower supplied by Employer when he was injured. It was within the province of the WCJ to weigh the evidence in Claimant's favor and find that he was on Employer's premises when the injury occurred.

Employer also asserts that the WCJ failed to make a finding regarding Claimant's admission that he was warned not to pet the dog because the dog snapped at people. While the WCJ did not specifically address all of Claimant's testimony in the WCJ 2010 Decision, the WCJ did find that Claimant had a conversation with the dog owner's father. (2010 FOF ¶ 4.) This conversation included the father of the dog's owner telling Claimant that the dog has a tendency to snap at people. (June 3, 2010 Hr'g Tr. at 16–17, R.R. at 87a–88a.) The conversation also included Claimant asking for permission prior to petting the dog and putting out his hand "to see if the dog was receptive," because he "wasn't going to knowingly pet a mean dog or put [himself] knowingly in harm's way." (Hr'g Tr. at 17, R.R. at 88a.)

Thus, in finding that Claimant was injured in the course and scope of his employment, the WCJ considered the events surrounding the incident and the location where the injury occurred. Employer is asserting error on the part of the WCJ because he did not make findings favoring Employer's contention that Claimant was

not injured in the course and scope of his employment. However, the fact that the WCJ did not make findings that the Employer believes should have been made does not make the WCJ 2010 Decision unreasoned.

Next, Employer argues that the WCJ's findings of fact do not support the conclusion that Claimant's actions were merely a temporary departure and furthered Employer's business interests. Employer contends that Claimant did not satisfy the standard to prove he was acting in the course of employment because his "decision to move to the dog was in no way furthering the business interests of the Employer." (Employer's Br. at 18.)

■■■ Pursuant to Section 301(c)(1) of the Act, in order to be compensable, an employee's injury must arise "in the course of employment and [be] related thereto." 77 P.S. § 411(1). An injury arising in the course of employment includes "all other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere," and where the employee, although not engaged in the furtherance of the employer's business, "is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, [and] the employe's presence thereon being required by the nature of his employment." *Id.* However, it is well established that "neither small temporary departures from work to administer to personal comforts or convenience, nor inconsequential or innocent departures break the course of employment." *The Baby's Room v. Workers' Compensation Appeal Board (Stairs)*, 860 A.2d 200, 203 (Pa.Cmwlth.2004). "[W]hether an employee is acting within the scope of employment at the time of an injury is a question of law, which must be based on the findings of fact made by the WCJ." *Trigon Holdings, Inc. v. Workers' Compensation Appeal Board (Griffith)*, 74 A.3d 359, 362 (Pa.Cmwlth.2013) (citations omitted) (emphasis omitted).

Here, Employer contends that while the smoke break would be a temporary departure, similar to *Trigon Holdings,* Claimant's decision to pet the dog and the subsequent injury "demonstrate[s] much more than a temporary departure from his work duties." (Employer's Br. at 15.) In *Trigon Holdings,* this Court considered whether a claimant, who sustained injuries "while polishing a bolt for his child's go-cart" with his employer's tools, was acting in the course and scope of employment at the time of his injury. *Trigon Holdings,* 74 A.3d at 361. The WCJ found that the claimant "intended to be in the tool and die department for 5 minutes," that the "[c]laimant told his co-workers that he would be back in a couple of minutes," and that "he went to the tool and die room located 20 to 25 yards away." *Id.* at 364 (citation omitted). The WCJ concluded that the claimant's actions constituted a "small temporary departure from work" and "did not break the course of his employment." *Id.* This Court disagreed with the WCJ's conclusion holding that the claimant's "departure from the course of his employment was strongly marked and not trivial," and that the "[c]laimant was not injured attending to his personal comfort ... so that he could continue to serve [e]mployer's interests." *Id.* This Court held that the "[c]laimant actively disengaged" from his responsibilities, including checking to make sure the machines he supervised were operating properly before informing his co-workers that he was leaving, illustrated a "pronounced and significant" divergence from his duties. *Id.* at 364–65. Accordingly, this Court held that

the claimant's injuries did not occur in the course and scope of his employment. *Id.* at 365.

In the present case, unlike the claimant in *Trigon Holdings*, Claimant did not actively disengage from his work to pet the dog. The claimant in *Trigon Holdings* prepared to leave his work station when he checked to make sure all of his employer's machines were working properly before proceeding to do his personal work. *Id.* at 364. Additionally, he informed his co-workers that he was leaving and where they could find him. *Id.* at 364–65. Here, Claimant made no such departure. Instead, Claimant's departure is similar to the short cessation from work duties in *The Baby's Room.*

In *The Baby's Room,* the claimant was injured while working as a furniture delivery person when, after delivering furniture, he "suddenly jumped up to touch a basketball rim that was on the driveway of the property of the delivery." *The Baby's Room,* 860 A.2d at 202. The claimant's "hand slipped off the rim and he fell backwards, hitting his head on the concrete pavement." *Id.* As a result, the " [c]laimant suffered a traumatic brain injury." *Id.* Based on the WCJ's findings, this Court held that the claimant's actions were "an inconsequential departure from delivering furniture for [e]mployer." *Id.* at 206. This Court reasoned that "[b]ecause an interval of leisure would certainly include a short cessation from work duties," and that the act of jumping to touch the basketball hoop was considered such a "cessation," the claimant was in the course of employment when he sustained his injury. *Id.* at 205–06.

Similar to the claimant in *The Baby's Room,* Claimant's act of petting the dog was a short cessation from his work duties. Claimant testified that, while on his smoke break, his co-worker's father brought her dog to the back of the restaurant close to the smoke break area. (June 3, 2010 Hr'g Tr. at 6–7, R.R. at 77a–78a.) Claimant also testified that he got down on his knee to pet the dog and it started to lick his face for approximately ten seconds. (Hr'g Tr. at 7, R.R. at 78a.) When he got up, the dog growled and bit him in the face. (2010 FOF ¶ 4; Hr'g Tr. at 7, R.R. at 78a.) Claimant testified that, at the time of his injury, he still had a cigarette in his hand. (Hr'g Tr. at 9, R.R. at 80a.)

This departure from Claimant's work is not comparable to the departure in *Trigon Holdings.* Claimant did not make a pronounced departure from his work; rather, he was on a break expressly permitted by Employer in an area designated by Employer as the break area. In addition, Claimant did not feel the need to inform his co-workers that he would be departing from his normal duties as a line cook. Claimant testified that at some point during the smoke break all of the employees on duty that night were outside with him. (2010 FOF ¶ 6; Hr'g Tr. at 8, R.R. at 79a.) Therefore, the WCJ did not err in finding that Claimant's act of petting the dog was a temporary departure from his work duties.

■ Employer further argues that the reasoning of *Penn State University v. Workers' Compensation Appeal Board (Smith),* 15 A.3d 949 (Pa.Cmwlth.2011), applies because Claimant ignored warnings about the dog prior to his injury and, thus, the act of petting the dog was wholly foreign to his employment and was " 'premeditated, deliberate, extreme[,] and inherently of a high-risk nature.' " (Employer's Br. at 18 (quoting *Penn State University,* 15 A.3d at 954).) However, Claimant's actions here do not resemble that of the claimant in *Penn State University.*

In *Penn State University,* the claimant was working as a cook in the employer's food service department and also held a position with the housing department. *Id.* at 950. The claimant was cleaning dorm rooms at a residence hall for the employer when he left to take his half hour unpaid lunch break at an on-Campus dining facility. *Id.* The claimant was walking to the dining facility when he decided to jump down a flight of approximately twelve stairs. *Id.* The "[c]laimant landed very hard with his feet flat," and sustained serious injuries in both legs. *Id.* This Court held that the claimant's departure was not small or temporary, and the action of jumping down the stairs was "wholly foreign to his employment." *Id.* at 954. We reasoned that "[t]he premeditated, deliberate, extreme, and inherently high-risk" behavior was "sufficient to remove [the c]laimant from the course and scope of his employment." *Id.* at 954–55.

Here, before petting the dog, Claimant held out his hand to determine whether the dog would be receptive to him. (Hr'g Tr. at 7, R.R. at 78a.) After determining that the dog would be receptive, Claimant got down on his knee and the dog began to lick his face. (Hr'g Tr. at 7, R.R. at 78a.) Claimant also testified that he did not do anything to antagonize the dog into biting him. (Hr'g Tr. at 10, R.R. at 81a.) Therefore, Claimant's act of petting the dog was not "premeditated, deliberate, extreme, and inherently of a high-risk nature," *Penn State University,* 15 A.3d at 954, so as to remove him from his course of employment.

■ Employer also cites *Lewis v. Workers' Compensation Appeal Board (Andy Frain Services, Inc.),* 29 A.3d 851 (Pa. Cmwlth.2011), in support of the argument that the WCJ's findings do not support the conclusion that Claimant was in the course and scope of employment. Employer argues that, similar to the claimant in *Lewis,* Claimant left his assigned work area and his activity was not in furtherance of Employer's business.

In *Lewis,* the claimant was employed as an event ambassador and his sole duty "was to watch an open tent with a Lexus vehicle on display" for the entirety of his twelve-hour shift. *Id.* at 854–55. Towards the end of his shift, the claimant heard noises from outside the tent and went to investigate. *Id.* at 854. While away from the tent and investigating the noise the claimant was injured. *Id.* After reviewing the WCJ's findings and conclusions of law, this Court held that the claimant was injured on the premises, but was not engaged in the furtherance of the employer's business or interests; therefore, the claimant was not in the course and scope of his employment. *Id.* at 862.

Claimant, unlike the claimant in *Lewis,* was on a permitted smoke break at the time of his injury. The WCJ found that Employer specifically allowed its employees two smoke breaks per shift. (2010 FOF ¶ 17.) The WCJ also found that during his break Claimant "was in an approved area where everybody smoked," that Employer "supplied an ashtray tower for the employees' use" and, at the time of his injury, Claimant "was approximately three [feet] away from the ashtray tower." (2010 FOF ¶ 5.) As pointed out by the Board, Employer "had an interest in allowing its employees to take breaks and not having them smoke inside its restaurant." (Board 2012 Op. at 6.) In short, Claimant continued to further Employer's interests even though he was on a smoking break. Therefore, we do not find Employer's argument persuasive that Claimant's actions in the present case are similar to that of the claimant in *Lewis.*

Finally, Employer contends that the WCJ's conclusion that Claimant was in the

course and scope of his employment when he was injured on March 16, 2010, is contrary to well established case law. As support for this contention, Employer cites *Department of Labor and Industry v. Workers' Compensation Appeal Board (Savani)*, 977 A.2d 585 (Pa.Cmwlth.2009), and *Pesta v. Workmen's Compensation Appeal Board (Wise Foods)*, 153 Pa. Cmwlth. 616, 621 A.2d 1221 (1993). Employer asserts that these cases support the conclusion that "Claimant took himself out of the scope of employment by leaving his job station, exiting the restaurant, advancing to a dog which he was warned to avoid and suffering a facial bite." (Employer's Br. at 21.) In other words, Employer contends that because Claimant was not furthering Employer's interests, he abandoned his employment.

In *Savani*, this Court reviewed whether a claimant was "within the course and scope of her employment" when she fell while off the employer's premises "during her paid break from work." *Savani*, 977 A.2d at 586. This Court held that the claimant did not establish that she was within the scope of her employment, because her decision to leave the employer's premises was not furthering the interests of the employer and the departure was not for "personal comfort or convenience." *Id.* at 590. This Court also held that her departure and resulting injury was not an inconsequential departure from work. *Id.*

In *Pesta*, the claimant was the mother of the decedent's child who filed a fatal claim petition on behalf of the minor child. *Pesta*, 621 A.2d at 1222. The decedent was killed by a passing car while returning to work from an authorized break. *Id.* The decedent left the employer's premises "to deposit aluminum cans that he collected from the plant for his financial benefit." *Id.* The WCJ found that, "[a]lthough the activity of collecting cans was not prohibited by [e]mployer, the parties specifically stipulated that said activity was also not in furtherance of [e]mployer's business or affairs." *Id.* (quotations omitted). This Court concluded that "[t]he decedent was merely a member of the general public on a public street and was not on a mission directly related to his employment," and, therefore, the decedent was not acting in the course of his employment when the fatal injury occurred. *Id.* at 1223.

In the present case, neither *Savani* nor *Pesta* are dispositive as to whether Claimant was within the course and scope of his employment at the time of his injury because Claimant's actions did not amount to an abandonment of his employment. Claimant's initial smoke break was a temporary departure from his work to administer to his personal comforts and, thus, did not take him out of the course of his employment. Smoking during intervals that do not interfere with work duties have been found to be acceptable deviations from work. *Dzikowska v. Superior Steel Co.*, 259 Pa. 578, 103 A. 351, 352 (1918). These types of "intervals for leisure" are considered to be within the scope of employment. *See Hess v. Catholic Knights of St. George*, 149 Pa.Super. 575, 27 A.2d 542, 544 (1942) (citing *Dzikowska*, 103 A. at 352). Moreover, Claimant's subsequent act of petting his co-worker's dog also did not take him out of the scope of employment because it was an inconsequential departure from his job as a line cook. Accordingly, the WCJ did not commit an error of law by concluding that Claimant established that he was in the course and scope of his employment at the time of his injury.

For the foregoing reasons, we affirm the Board's Order.

## ORDER

**NOW**, November 10, 2014, the Order of the Workers' Compensation Appeal Board,

entered in the above-captioned matter, is hereby **AFFIRMED.**