IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stanley Henderson,                     :
            Petitioner             :
                                  :
        v.                       :
                                  :
WP Ventures, Inc. (Workers'       :
Compensation Appeal Board),     :   No. 392 C.D. 2021
            Respondent       :   Argued: December 13, 2021


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION
BY JUDGE FIZZANO CANNON           FILED: January 14, 2022


          Petitioner Stanley Henderson (Claimant) petitions for review from the December 21, 2020, decision and order of the Workers' Compensation Appeal Board (Board). The Board reversed the January 3, 2020, decision and order of the Workers' Compensation Judge (WCJ), which awarded Claimant wage loss benefits and medical costs after finding he was within the course of his employment when he sustained a disabling injury. Upon review, we reverse the Board's order and reinstate the WCJ's order.


## I. Factual & Procedural Background

          On April 4, 2018, Claimant filed a claim petition asserting that he sustained disabling work-related injuries on January 8, 2018. Reproduced Record (R.R.) at 2a-6a. It was ultimately determined that the proper employer at the time

of the incident was WP Ventures, Inc. (WP Ventures), which contested Claimant's claim petition. WCJ Decision, 1/3/20, at 8.

In his deposition, Claimant testified that he receives Social Security Disability (SSD) benefits due to mental health conditions. Certified Record (C.R.) at 238-39. WP Ventures finds part-time minimum wage jobs for individuals receiving SSD who wish or need to earn supplemental income. *Id*. at 240-41. In late 2015 or early 2016, Claimant was placed as a custodial worker at the Center in the Park, a senior citizens' community center located in a small public park in the Germantown area of Philadelphia. *Id*. at 243-44 & 259. His duties included cleaning, emptying trash, performing basic maintenance, and setting up the facility for events and meetings. *Id*. at 249-51. He worked at the Center in the Park for 20 hours a week on weekday afternoons but was paid by WP Ventures. *Id*. at 248 & 253.

On the day of the incident, the facility was being cleaned and ventilated after a roof leak and Claimant was not able to do most of his usual tasks. C.R. at 254 & 286. At about 4:00 p.m., he was hungry and decided to take a break for a cigarette and to get a sandwich at a shop on Germantown Avenue just outside the park. *Id*. at 255, 308-09 & 323. Claimant testified that he would ask for permission if his supervisor was around, but if his supervisor was not around, it was understood that he could take limited breaks without permission: "[I]f you wanted to take a smoke, and you didn't have anything scheduled to do at that specific time, you were allowed to go out and maybe get a sandwich if you were hungry or take a smoke." *Id*. at 256 & 284-85. Claimant added that it was not a written or specific policy: "When [the supervisor] was there, to be seen, . . . we would ask him directly. But

2

there were times that he may be busy, or something like that, and if we weren't doing anything we were allowed to go out and take a smoke." *Id*. at 285.

Claimant stated that his supervisor was not around at the time, so he walked out of the building by himself, down the outside steps, and onto a pathway in the park area, where he slipped on ice, fell backwards, and hit his head. *Id*. at 256-59, 289 & 310. He managed with help to return to the building. *Id*. at 259. A secretary called his supervisor, who was elsewhere in the building. *Id*. at 260. When his supervisor came, Claimant told him what happened, and his supervisor asked how he was. *Id*. Claimant was taken to the hospital in an ambulance. *Id*. at 260. He was unable to return to work due to his injuries and ongoing pain and was ultimately discharged from his job. *Id*. at 262 & 299.

WP Ventures did not present evidence or witnesses to rebut Claimant's testimony. On January 3, 2020, the WCJ issued a decision and order awarding Claimant medical costs and wage loss benefits of $130.50 per week on an ongoing basis. WCJ Decision at 10. The WCJ credited Claimant's testimony concerning his job duties, work environment, and the incident, concluding that Claimant was in the course of employment when he was injured: "Claimant was taking a cigarette break when he slipped and fell on the walkway outside of the building in which he was working, and this was a minor deviation from employment that would fall under the personal comfort doctrine." WCJ Decision at 7-8.

The Board reversed, concluding that because Claimant had been away from his work premises attending to personal needs (a cigarette and a takeout sandwich) and not directly furthering the employer's business, he was no longer in the course of employment when he was injured and was therefore not eligible for

3

workers' compensation benefits. Board Decision, 12/21/20, at 6-8. Claimant appeals to this Court.[1]

## II. Parties' Arguments

Claimant argues that the WCJ correctly held that he was within the course of employment at the time of the incident pursuant to the "personal comfort" doctrine, which posits that when an employee leaves the work premises for a short period of time or to attend to personal needs that will help the employee better perform his or her work duties, the employer's interests are furthered, the course of employment will not be broken, and an injury occurring during that time is compensable. Claimant's Br. at 8-13 (citing, *inter alia*, *1912 Hoover House Rest. v. Workers' Comp. Appeal Bd. (Soverns)*, 103 A.3d 441 (Pa. Cmwlth. 2014)). WP Ventures responds that the Board correctly reversed the WCJ because Claimant's actions amounted to a departure from work for purely personal reasons such that the course of his employment was broken at the time he was injured. WP Ventures's Br. at 9-17 (citing, *inter alia*, *Dep't of Lab. & Indus. v. Workers' Comp. Appeal Bd. (Savani)*, 977 A.2d 585 (Pa. Cmwlth. 2009)).

---

[1] In a June 15, 2021, memorandum opinion and order, this Court denied WP Ventures's motion to quash and granted Claimant's motion to appeal *nunc pro tunc*. Claimant asserted that a defect in the caption of the Board's decision led him to misfile his initial timely petition for review with this Court, which he subsequently attempted to cure with an untimely but correctly filed petition for review. We concluded that: the Board's error amounted to an operational breakdown, Claimant's efforts to rectify the situation were prompt and sufficient, WP Ventures would not be prejudiced by permitting the appeal to proceed, and *nunc pro tunc* relief was warranted.

4

## III. Discussion

"[I]n a claim proceeding, the employee bears the burden of establishing a right to compensation and of proving all necessary elements to support an award." *Inglis House v. Workmen's Comp. Appeal Bd. (Reedy)*, 634 A.2d 592, 595 (Pa. 1993).[2] Section 301(c)(1) of the Pennsylvania Workers' Compensation Act (Act)[3] provides that in order to be compensable, an injury must have arisen "in the course of his employment and [be] related thereto." 77 P.S. § 411(1). Section 301(c)(1) further states that "in the course of his employment" shall include "injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere[.]" 77 P.S. § 411(1).

Although the claimant bears the burden of proof in this inquiry, the Act is remedial in nature and intended to benefit workers; therefore, the phrase "actually engaged in the furtherance of the business or affairs of the employer" in Section 301(c)(1) must be given a liberal construction to effectuate the humanitarian objective of the Act. *Lehigh Cnty. Vo-Tech Sch. v. Workmen's Comp. Appeal Bd. (Wolfe)*, 652 A.2d 797 (Pa. 1995). It is a case-specific inquiry in which we consider the nature of the employment and the worker's conduct. *U.S. Airways v. Workers' Comp. Appeal Bd. (Dixon)*, 764 A.2d 635, 640 (Pa. Cmwlth. 2000) (*Dixon*); *see also Penn State Univ. v. Workers' Comp. Appeal Bd. (Smith)*, 15 A.3d 949, 954 (Pa. Cmwlth. 2011) ("[T]here is no fixed standard by which to make such a

---

[2] Our scope of review in a workers' compensation appeal is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *City of Scranton v. Workers' Comp. Appeal Bd. (Roche)*, 909 A.2d 485 (Pa. Cmwlth. 2006).

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

5

determination."). Whether an employee is acting within the scope of employment at the time of an injury is a question of law, which must be based on the findings of fact made by the WCJ. *Trigon Holdings, Inc. v. Workers' Comp. Appeal Bd. (Griffith)*, 74 A.3d 359, 362 (Pa. Cmwlth. 2013).

As noted, an employee sustains an injury in the course of employment when he is injured while engaged in the furtherance of the employer's business or affairs, whether on or off the employer's premises. 77 P.S. § 411(1); *Ace Wire Spring & Form Co. v. Workers' Comp. Appeal Bd. (Walshesky)*, 93 A.3d 923, 926 (Pa. Cmwlth. 2014). Here, as there is no dispute that Claimant was away from work premises when the incident occurred, the question is whether he sustained his injury while engaged in furthering his employer's business when he left the premises for a cigarette and a sandwich.

It is well established that "neither small temporary departures from work to administer to personal comforts or convenience, nor inconsequential or innocent departures break the course of employment." *The Baby's Room v. Workers' Comp. Appeal Bd. (Stairs)*, 860 A.2d 200, 203 (Pa. Cmwlth. 2004). Here, the "personal comfort" aspect of that principle is at issue. The analysis "embraces intervals of leisure within regular hours of the working day" and recognizes that "momentary departures from the work routine do not remove an employee from the course of his employment. . . . Breaks which allow the employee to administer to his personal comfort better enable him to perform his job and are therefore considered to be in furtherance of the employer's business." *Dixon*, 764 A.2d at 641 (quoting *Cozza v. Workmen's Comp. Appeal Bd.*, 383 A.2d 1324, 1325 (Pa. Cmwlth. 1978)).

6

This policy has been part of Pennsylvania's workers' compensation system since its beginnings over a century ago. In *Dzikowska v. Superior Steel Co.*, 103 A. 351 (Pa. 1918), the worker was employed in a shipping room loading steel onto railroad cars. *Id.* at 351. During a break between loads, he stepped out of the shipping room and into a boxcar to smoke a cigarette. *Id.* When he struck a match on his trousers, his oil-soaked clothing burst into flames and he died from his injuries. *Id.* Our Supreme Court upheld an award of benefits to the worker's widow and children, stating:

> Acts of ministration by a servant to himself, such as quenching his thirst, relieving his hunger, protecting himself from excessive cold, performance of which while at work are reasonably necessary to his health and comfort, are incidents to his employment and acts of service therein within the workmen's compensation acts, though they are only indirectly conducive to the purpose of the employment. Consequently[,] no break in the employment is caused by the mere fact that the workman is ministering to his personal comforts or necessities, as by warming himself, or seeking shelter, or by leaving his work to relieve nature, or to procure drink, refreshments, food, or fresh air, or to rest in the shade.

*Id.* at 352 (quoting 1 Honnold on Workmen's Compensation, § 111 (1917)) (additional quotation marks omitted). Notably, the Court distinguished between acts of personal comfort that occur during set break periods and those that occur while the worker is momentarily freed from actual work, finding the latter instance did not break the course of employment:

> This was not a rest period. It was not a period when, by the rules of the employment, the employe was free from the duties of his employment. It was an indeterminate

period of waiting for the occurrence of an event which would renew the active operations of the employment. That might be a minute, or it might be very much more.

*Id*. at 352.

When employees take permitted cigarette breaks outside of their work premises, these are generally found to lie within the personal comfort doctrine. In *1912 Hoover House Restaurant*, the claimant was taking a permitted cigarette break in a designated area outside the restaurant where he worked when he was bitten by a co-worker's dog; he sustained facial lacerations and permanent scarring. This Court found the claimant had not stepped outside the course of his employment when the injury occurred because his actions constituted only a "short cessation from his work duties" and fell within the personal comfort doctrine. 103 A.3d at 448-50; *see also Dzikowska*, 103 A. at 352 ("It is not unreasonable for workmen to smoke out of doors during intervals of work where it does not interfere with their duties."). Here, based on *1912 Hoover House Restaurant* and *Dzikowska*, we conclude that to the extent Claimant's departure from his work premises was for a cigarette break, it fits within the personal comfort doctrine and did not constitute a break from the course of his employment.

Cases involving off-premises injuries that occur when employees engage in meal breaks have produced varying fact-bound conclusions. In *Cozza*, the claimant did not have a set time for lunch and was permitted to take a lunch period of his own choosing. 383 A.2d at 1326. On the date of injury, he walked from his work premises to a nearby restaurant during his lunch hour to pick up a sandwich, then to a nearby church "where he remained for a short time" before injuring himself due to a slip and fall while walking back to work. *Id*. at 1324. This Court found that the claimant "did more than merely take a lunch break" and was therefore not within

8

the course of employment when he was injured. *Id.* at 1326; *see also Peccon v. Francis Mkt.*, 215 A.2d 261, 262-63 (Pa. Super. 1965) (employee who fell on sidewalk while walking to restaurant during "daily lunch period of one hour" found not within course of employment).

The course of employment was also broken in *Collins v. Workmen's Compensation Appeal Board (American Society for Testing and Materials)*, 512 A.2d 1349 (Pa. Cmwlth. 1986), where the claimant fell on the sidewalk two blocks from her office while returning from her assigned lunch break period. *Id.* at 1350. This Court concluded that the claimant had not remained within the course of employment because at the time of the incident, she "was a member of the general public on the public sidewalk and was not on a mission authorized, directed or otherwise related to her employment." *Id.* at 1352 (quoting *Riccio v. Workmen's Comp. Appeal Bd. (Bi-Comp., Inc.)*, 464 A.2d 669 (Pa. Cmwlth. 1983) (employee who fell on sidewalk while walking to food vending cart prior to beginning of work shift found not within course of employment)).

In *Department of Labor & Industry v. Workers' Compensation Appeal Bd. (Savani)*, 977 A.2d 585 (Pa. Cmwlth. 2009), the claimant was injured walking outside of the work premises while on a formal break to which she was entitled pursuant to an agreement between her union and the employer. *Id.* at 587. This Court concluded that in the absence of evidence that the claimant was engaged in any of the activities usually associated with the personal comfort doctrine, such as taking a cigarette break or getting coffee or food, she had not shown that she remained within the course of employment. *Id.* at 590.

By contrast, the course of employment remained intact in *D'Agata National Inc. v. Workmen's Compensation Appeal Board (D'Agata)*, 479 A.2d 98

9

(Pa. Cmwlth. 1984). There, the claimant was entering a "mobile luncheonette" to get a cup of coffee before meeting customers when he was shot during a robbery attempt on the luncheonette. *Id*. at 99. The luncheonette was located on property owned by the employer but adjacent to the claimant's work premises. *Id*. This Court upheld the award of benefits, concluding:

> Minor deviations for personal comfort or leisure will not break the chain of conduct in the "course of employment" even if the employee is off the work premises. There is no evidence to support the employer's contention that [the claimant's] workday was over, or that he was not furthering the employer's business.

*Id*. at 100.

In *Dixon*, the claimant did not have a set time for lunch but was permitted to order food from restaurants in the building lobby and return to her work area lunchroom while remaining available for work duties if needed. 764 A.2d at 638. On the date of injury, she was walking towards the ground floor elevator to return to work with her takeout food from one of the restaurants when she slipped and fell. *Id*. We affirmed the award of benefits, concluding that the claimant's "momentary departure from the work area to get lunch should not bar her entitlement to compensation." *Id*. at 641-42 (citing *D'Agata*).

In deciding *Dixon*, this Court particularly emphasized the informal nature of the claimant's departure from work as compared with the cases relied on by the employer (including *Collins*): "In those cases, the claimants were injured while off-duty during their lunch hour. In this matter, however, the facts found by the WCJ establish that [the claimant] was not on lunch break at the time of the injury." *Dixon*, 764 A.2d at 641. Therefore, we concluded that the claimant's "momentary, inconsequential and innocent departure from the work area during the

10

regular working hour to pick up the takeout lunch from the restaurant located on the first floor of the building cannot be considered an event breaking the chain of conduct in the course of her employment." *Id*. at 642.

Remaining aware that this is a case-by-case inquiry and that each matter will depend on its evidence, the foregoing cases suggest that the personal comfort doctrine may apply when the claimant's time away from the work premises is informal in nature, purely devoted to personal comfort of a physical nature, such as a cigarette break or to procure food, and brief enough that the course of employment is not broken. *1912 Hoover House Rest.*, 103 A.3d at 444 (cigarette break outside of restaurant); *Dixon*, 764 A.2d at 637 (takeout food from restaurant in building lobby); *D'Agata*, 479 A.2d at 99 (cup of coffee in adjacent mobile luncheonette). The doctrine may not apply, however, if the worker is on a formalized break or lunch period during which an employee is likely to enjoy a degree of autonomy, however brief, and may engage in other activities in addition to immediate personal needs. *Savani*, 977 A.2d at 586-87 (walking during paid break period); *Collins*, 512 A.2d at 1350 (returning from assigned lunch period); *Cozza*, 383 A.2d at 1324-25 (returning from picking up a sandwich and visiting church during self-selected lunch hour).

Here, Claimant testified that if his supervisor was readily available, he would ask to leave the premises for limited purposes like a cigarette break or to get a sandwich but that he could do so independently if his supervisor was not nearby, and prior to this incident, his supervisor was not in the area. C.R. at 256 & 284-85; *see* WCJ Decision at 7-8 (crediting Claimant's testimony). This is comparable to the facts in *Dzikowska* and *1912 Hoover House Restaurant*, where cigarette breaks were permitted, and particularly *Dixon*, where the employer had a policy that

11

claimant could leave the work area for a short time to pick up food from a restaurant in the building's lobby.

Claimant's ultimate destination was a sandwich shop across the street from the small park where the Center in the Park was located, and to reach it he had to walk away from his work premises and through the park, which was not owned or controlled by his immediate employer, Center in the Park. C.R. at 255, 308-09, & 323. Although he was therefore off the employer's premises when the incident occurred, Claimant did not testify that he went or intended to go anywhere other than for a cigarette and to get a sandwich and then back to his work premises. This is also similar to *Dixon* and *D'Agata*, as well as the circumstances underlying the personal comfort doctrine as described in *Dzikowska*, in that the evidence reflects the departure from work remained limited to immediate personal comfort needs and did not include, for example, a detour to church, as in *Cozza*.

The Board cited *Savani*, *Collins*, and *Cozza*, which WP Ventures also rely on, surmising that while Claimant might have remained within the course of employment if his actions were limited to a cigarette break, because he also left the premises to get a sandwich and was not directly furthering the employer's business, he left the course of his employment. Board's Decision at 6-7; WP Ventures's Br. at 13-15. However, their position ignores the nature of the personal comfort doctrine, which is that the benefit to the employer need not be direct: "Breaks which allow the employee to administer to his personal comfort better enable him to perform his job and are therefore considered to be in furtherance of the employer's business." *Dixon*, 764 A.2d at 641.

12

WP Ventures also seeks to distinguish *Dixon* and *D'Agata*, which the Board did not address, on the basis that the injuries in those cases occurred in areas that, while not within the actual work premises, were under some degree of the employer's control or adjacent to the place of employment rather than here, where Claimant was in the public park away from the Center in the Park building where he worked. WP Ventures's Br. at 15-16.

However, neither *Dixon* nor *D'Agata* were analyzed as premises cases, and as reiterated in *D'Agata*, if the employee is found to be engaged in the employer's business at the time of the injury, which includes short departures for personal comforts, then whether he or she is on or off the premises, or near them, does not govern the inquiry. 479 A.2d at 100 ("Minor deviations for personal comfort or leisure will not break the chain of conduct in the 'course of employment' even if the employee is off the work premises."); *see also Dixon*, 764 A.2d at 641-42. The key in both cases was not the location of the injury, but whether the claimant's actions leading up to the injury represented a definitive break from or abandonment of work activities or "[m]inor deviations for personal comfort or leisure," as described in *D'Agata*. Also, in both *D'Agata* and *Dixon*, the claimants' actions were specifically described as informal excursions for food and contingent on the availability of a short period of time during the work shift to do so.

Here, unlike in *Savani*, *Collins*, and *Cozza*, Claimant was not on a formal break or lunch period, during which an employee is likely to enjoy a degree of autonomy, however brief, that may well break the course of employment. Therefore, this case is unlike those cited by the Board and relied on by WP Ventures. Moreover, according to Claimant's unrebutted testimony, the unwritten policy at the Center in the Park was that if the supervisor was unavailable, workers who had a

13

short period of "down time" during their shift could leave the building without permission for cigarette breaks and to get sandwiches and that he planned to do only those things while off the premises on the date of injury. C.R. at 256 & 284-85. Within this fact-bound inquiry, WP Ventures had the opportunity, via deposition or at a hearing before the WCJ, to present evidence that Claimant's actions were outside the policies and course of his employment. For example, his supervisor could have testified that workers like Claimant could not leave for a cigarette or to get a sandwich from the nearby shops without express permission, or that Claimant was on a formal break during which he was free to spend his time how he chose. WP Ventures chose not to do so.

Given the evidence as a whole, including Claimant's unrebutted testimony, the relevant precedent, and the salutary goals of the Act, we conclude Claimant established that his actions fell within the parameters of the personal comfort doctrine when he left his employment premises during a lapse in his work duties to smoke a cigarette and procure a sandwich. The WCJ therefore correctly concluded that Claimant was within the course of his employment when he was injured and that his injuries are compensable under the Act.[4]

---

[4] The Board also cited *Riccio*, emphasizing that the claimant there was off the employer's premises and on a public sidewalk when she was injured. Board Decision at 6. However, in *Riccio*, the claimant had not begun her work shift when the injury occurred. 464 A.2d at 670. *Riccio* therefore does not involve the personal comfort doctrine and is not dispositive here.

## IV. Conclusion

For the foregoing reasons, we reverse the Board's December 21, 2020, order and reinstate the January 3, 2020, order of the WCJ.

_____
CHRISTINE FIZZANO CANNON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stanley Henderson,  :
          Petitioner  :
   :
       v.  :
   :
WP Ventures, Inc. (Workers'  :
Compensation Appeal Board),  :  No. 392 C.D. 2021
          Respondent  :

## O R D E R

AND NOW, this 14th day of January, 2022, the December 21, 2020, decision and order of the Workers' Compensation Appeal Board is REVERSED. Accordingly, the January 3, 2020, decision and order of the Workers' Compensation Judge is reinstated.

_____
CHRISTINE FIZZANO CANNON, Judge