**PENN STATE UNIVERSITY,**
**Petitioner**

**v.**

**WORKERS' COMPENSATION**
**APPEAL BOARD (SMITH),**
**Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 9, 2010.

Decided Feb. 22, 2011.

Richard E. Bordonaro, Erie, for petitioner.

Kelly J. Dollins, Washington, for respondent.

BEFORE: COHN JUBELIRER, Judge, and BROBSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge BROBSON.

Petitioner Penn State University (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board), dated March 17, 2010, affirming the decision of a Workers' Compensation Judge (WCJ), which granted a claim petition filed by Jeffrey Smith (Claimant). For the reasons set forth below, we reverse.

Claimant was regularly employed as a cook with Employer's Food Service Department. (Reproduced Record (R.R.) at 33.) During the summer, Claimant alternated between his regular job, as a cook, and a position in the Housing Department, where he performed housekeeping duties consisting of cleaning dorm rooms, apartments, and common areas on campus. (*Id.*) On June 7, 2007, the day of his injury, Claimant was cleaning dorm rooms at Perry Hall for Employer's Housing Department. (*Id.* at 34.) Claimant left Perry Hall to take his one-half (1/2) hour unpaid lunch leave at Bruno's, an on-campus dining facility where Claimant had an employer-sponsored meal plan.[1] (*Id.* at 34, 116.) Claimant was walking from Perry Hall to Bruno's on a walkway that included three flights of stairs, and he intentionally jumped down the second flight of approximately twelve steps.[2] (*Id.* at 39.) Claimant landed very hard with his feet flat and injured both legs. (*Id.* at 35.)

Claimant was subsequently diagnosed by David M. Babins, M.D., with a distal right tibia fracture and talar dome fractures of the right ankle and a fracture of

---

1. Claimant testified that if he was going to leave campus over his lunch break, he must first notify a supervisor and clock out and back in upon his return.

2. Photographs of the flight of steps are contained in the Reproduced Record. (R.R. at 118–124.)

the distal tibia and the talus of the left ankle. (*Id.* at 177.) On June 15, 2007, Dr. Babins performed surgery on Claimant and inserted screws into both ankles. (*Id.*) Claimant returned to work without a loss of earnings on August 7, 2007. (*Id.* at 200.) On May 23, 2008, Dr. Babins performed outpatient surgery to remove the screw from Claimant's left ankle, because the screw was rubbing the ligaments on the back of Claimant's leg. (*Id.* at 181.) Claimant had his last follow-up appointment with Dr. Babins on June 4, 2008. (*Id.* at 200.)

On June 25, 2007, Claimant filed a claim petition, alleging that he sustained a work-related injury in the nature of bilateral compression fractures of the right and left tibias while in the course and scope of his employment with Employer on June 7, 2007. Employer maintained that Claimant was outside the course and scope of his employment when he was injured. Employer also raised the affirmative defense that Claimant was engaged in horseplay in violation of a positive work order at the time of his injury, such that he is not entitled to benefits. With the agreement of the parties, the WCJ bifurcated the proceedings and conducted a hearing on September 22, 2007, to first determine the issue of whether Claimant was in the course and scope of his employment when he was injured. (*Id.* at 195.)

During the hearing, Claimant testified that his decision to jump down the flight of stairs was a "whim," although he had thoughts of jumping down the steps prior to that date. (*Id.*) Claimant testified that he had previously considered whether it would be possible to jump the stairs. (*Id.* at 37.) Claimant testified that he was young and athletic, and he never thought he would break both of his legs. (*Id.* at 56.) Charmayne Naomi Snyder, Claimant's co-worker, testified that Claimant

told her at the end of May or early June of 2007 that he thought he could jump the flight of stairs. (*Id.* at 83–85.) Ms. Snyder testified that she told Claimant that the point was not whether he could make the jump, but where he would land. (*Id.* at 85.) Ms. Snyder testified that Claimant did not jump the steps that day, and she had no further discussion with him about jumping the steps. (*Id.* at 86.)

By Interim/Interlocutory Order dated May 14, 2008, the WCJ determined that Claimant was within the course and scope of his employment at the time of the injury and was disabled from June 7, 2007, to August 7, 2007, as a result of his work-related injury. (*Id.*) The WCJ reasoned that Claimant's actions in jumping down the steps on Employer's premises was not such an activity that was outside the realm of Claimant's work activities or a direct, intentional violation of a positive work order against horseplay. (*Id.* at 196.) The WCJ conducted a second hearing on August 5, 2008, where additional evidence was taken to address Claimant's medical condition and disability. (*Id.* at 93.) After the hearing, by decision and order dated April 9, 2009, the WCJ concluded that Claimant sustained bilateral tibia and talar fractures to his ankles in the course and scope of employment. (*Id.* at 199.) Employer appealed to the Board.

By order dated March 17, 2010, the Board affirmed the WCJ's decision, concluding that Claimant proved that his injury arose in the course of his employment and that Employer failed to prove its affirmative defense. (*Id.* at 203.) The Board noted that it found no support to conclude that Claimant's actions of jumping down a flight of stairs on the way to lunch was an activity so foreign to his regular work duties as to remove him from the scope of employment. (*Id.* at 212–13.) Employer

filed the subject petition for review with this Court.[3]

On appeal, Employer argues that the WCJ and the Board erred in concluding that Claimant sustained a compensable injury while in the course and scope of his employment when he intentionally jumped down a flight of stairs causing his own injury. Employer again raises the affirmative defense that Claimant was engaged in horseplay in violation of a positive work rule. Finally, Employer argues that the WCJ and the Board erred in concluding that Claimant was not fully recovered from his injury.

■ First, we will address Employer's argument that the WCJ and Board erred in concluding that Claimant injured himself while in the course and scope of his employment. Section 301(c)(1) of the Workers' Compensation Act (Act),[4] provides, in pertinent part:

> The terms "injury" and "personal injury," as used in this act, shall be construed to mean an injury to an employe ... arising in the course of his employment and related thereto ... shall include all other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere, and shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employe's presence thereon being required by the nature of his employment.

■ An injury is compensable under Section 301(c)(1) of the Act only if the injury arises in the course of employment and is causally related to thereto. *Dep't of Labor and Indus. v. Workers' Comp. Appeal Bd. (Savani)*, 977 A.2d 585, 588 (Pa. Cmwlth.2009). An injury may be sustained "in the course of employment" under Section 301(c)(1) of the Act where the employee is injured on or off the employer's premises while actually engaged in furtherance of the employer's business or affairs.[5] *U.S. Airways v. Workers' Comp. Appeal Bd. (Dixon)*, 764 A.2d 635, 640 (Pa.Cmwlth.2000), *appeal denied*, 567 Pa. 753, 788 A.2d 382 (2001).

■ To address Employer's contention that the Board erred in concluding that Claimant was injured in the course and scope of his employment, we begin by examining whether Claimant was actually engaged in the furtherance of Employer's business or affairs by considering the nature of the employment and Claimant's

---

**3.** Our standard of review in a workers' compensation appeal is limited to determining whether an error of law was committed, whether constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

**4.** Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 411.

**5.** An injury also may be sustained "in the course of employment" where the employee, although not actually engaged in the further-

ance of the employer's business or affairs: (a) is on the premises occupied or under the control of the employer or upon which the employer's business or affairs are being carried on; (b) is required by the nature of his employment to be present on the employer's premises; and (c) sustains injuries caused by the condition of the premises or by operation of the employer's business or affairs thereon. *U.S. Airways*, 764 A.2d at 640. Here, Claimant does not contend that he is entitled to benefits under the second analysis set forth in *U.S. Airways*.

conduct. *Id.* An activity that does not further the affairs of the employer will take the employee out of the course and scope of employment and serve as a basis for denial of the claim by the WCJ. *Pesta v. Workmen's Comp. Appeal Bd. (Wise Foods)*, 153 Pa.Cmwlth. 616, 621 A.2d 1221, 1222 (1993).

▮ Here, Claimant was on his lunch break when he was injured on Employer's premises. A review of the pertinent case law establishes that, typically, a claimant who is at lunch and sustains an injury off of the employer's premises is not acting in furtherance of the employer's business. *Camiolo v. Workers' Comp. Appeal Bd. (Am. Bank Notes)*, 722 A.2d 1173, 1174–75 (Pa.Cmwlth.), *appeal denied*, 560 Pa. 675, 742 A.2d 172 (1999); *see also Cozza v. Workmen's Comp. Appeal Bd.*, 34 Pa. Cmwlth. 605, 383 A.2d 1324 (1978) (holding claimant did more than merely take lunch break while he was walking from church to place of employment and was not actually engaged in furtherance of employer's business); *Savani*, 977 A.2d at 585 (holding claimant's injury occurred while walking on street off of employer's premises and did not occur during small temporary departure from work to tend to her personal comforts or convenience, nor did it occur during inconsequential or innocent departure from work). Also, employees who remain on an employer's premises for their lunch break and sustain an injury are generally considered to be in furtherance of the employer's business, unless the activity they are engaged in was so wholly foreign to their employment. *Kmart Corp. v. Workers' Comp. Appeal Bd. (Fitzsimmons)*, 561 Pa. 111, 748 A.2d 660 (2000); *see also Pinn v. Workers' Comp. Appeal Bd. (Hemlock Girl Scout Council)*, 754 A.2d 40 (Pa.Cmwlth.2000), *appeal denied*, 565 Pa. 658, 771 A.2d 1292 (2001) (holding claimant not entitled to benefits

for injuries sustained while attending bridal shower where there was no evidence that employer encouraged bridal shower to promote good relations among employees, provided the food for shower or encouraged claimant to attend the event). Generally, neither small temporary departures from work to administer to personal comforts or convenience, nor inconsequential or innocent departures will break the course of employment. *U.S. Airways*, 764 A.2d at 642. In answering whether a departure from work is lengthy or temporary, monumental or minor—*i.e.*, whether it is a break in the course of employment or not—there is no fixed standard by which to make such a determination. *Baby's Room v. Workers' Compensation Appeal Board (Stairs)*, 860 A.2d 200 (Pa. Cmwlth.2004), *appeal denied*, 582 Pa. 702, 871 A.2d 193 (2005). Additionally, the personal comfort doctrine recognizes that "breaks which allow the employee to administer to his personal comfort better enable him to perform his job and are, therefore, considered to be in furtherance of employer's business." *Cozza*, 383 A.2d at 1325.

In *Pinn*, this Court explained that certain factors are considered important when determining whether an employee is furthering an employer's business or affairs when injured while engaging in a social or personal activity during a work break or non-work hours. *Pinn*, 754 A.2d at 43. First, in concluding that an employee was engaged in the furtherance of the business or affairs of the employer, much emphasis is placed on evidence demonstrating that the employer encouraged the activity at issue. *Id.* In *Feaster v. S.K. Kelso & Sons*, 22 Pa.Cmwlth. 20, 347 A.2d 521 (1975), the WCJ found that the purpose of the company picnic, where claimant drowned, was to promote the employer's interest in good relationships with his employees, and the WCJ granted ben-

efits. Second, emphasis is also placed on a finding that the activity the claimant was engaged in furthered a specific interest of the employer. *Pinn,* 754 A.2d at 41. In *Pinn,* this Court affirmed a denial of benefits, concluding that the claimant failed to demonstrate that her attendance at a co-worker's bridal shower on the employer's premises was in furtherance of the business or affairs of the employer at the time of her injury, and, in addition, this Court determined that the claimant's presence at the bridal shower was not required by the employer. *Id.* at 44. In *Tredyffrin–East-town School District v. Breyer,* 48 Pa. Cmwlth. 81, 408 A.2d 1194, 1195 (1979), this Court affirmed the grant of benefits to a claimant when he was injured at a team picnic, because the picnic was found to be an annual tradition and a normal part of the activities involved in the school's (employer's) track program and that the employer encouraged the claimant's participation in extracurricular activities. Finally, this Court has considered whether the activity was necessary to maintain a claimant's employment skills. *Mann v. City of Philadelphia,* 128 Pa. Cmwlth. 499, 563 A.2d 1284 (1989), *appeal denied,* 525 Pa. 622, 577 A.2d 892 (1990). In *Mann,* this Court affirmed the grant of benefits to the administratrix of the estate of a lifeguard who drowned while swimming in the employer's pool during his dinner break, determining that an employee is entitled to benefits when injured during an activity necessary to maintain the skills required by the employee's job. *Id.* at 1287.

Claimant's actions in light of the nature of his employment (whether performing housekeeping or cooking duties for Employer), cannot be viewed as furthering Employer's business or affairs. In this case, the WCJ found that Claimant voluntarily jumped down a flight of stairs on a "whim," and that Claimant had thoughts of doing it before that date. (R.R. at 199.) Claimant did not trip or fall down the stairs, but walked up to the edge and jumped off the stairs and injured himself upon landing. (*Id.* at 53.) Employer did not encourage in any way Claimant to jump a flight of stairs during his lunch break. Moreover, Claimant's decision to eat at Bruno's is not determinative in deciding whether Claimant was in the course of his employment at the time of his injury.[6] Further, the facts do not establish that Claimant's actions furthered a specific interest of Employer. Finally, Claimant's action in jumping the stairs did not maintain any skills necessary to the performance of his job.

Moreover, Claimant was not taking a small, temporary departure or break from his employment to administer to his personal comfort; rather, Claimant was on his way to eat lunch at Bruno's on Employer's premises when he intentionally jumped down a flight of stairs and was injured. In this case, the actions taken by Claimant in jumping down the stairs, while he was on his lunch break, were wholly foreign to his employment. The premeditated, deliberate, extreme, and inherently high-risk nature of Claimant's actions are sufficient to remove Claimant from the course and

---

**6.** The Pennsylvania Supreme Court has noted that the fact that an employee found it convenient to eat her meals at work at a public eatery on employer's premises in no way established that she was required to eat there. *Kmart Corp.,* 561 Pa. at 123, 748 A.2d at 666. Moreover, whether or not an employer has a cafeteria on the premises should not be a dispositive factor in determining whether an employee was in the course of employment at the time of injury. *Collins v. Workmen's Comp. Appeal Bd. (Am. Soc'y for Testing Materials),* 99 Pa.Cmwlth. 228, 512 A.2d 1349, 1351 (1986), *appeal denied,* 515 Pa. 610, 529 A.2d 1083 (1987).

scope of his employment and distinguish this case from other cases, such as *Baby's Room*,[7] where a claimant engaged in an inconsequential departure from his work activities and received benefits for his injuries. *Baby's Room*, 860 A.2d at 204. We cannot conclude, therefore, that Claimant was in furtherance of Employer's business or affairs when he jumped down the flight of stairs.[8, 9]

Accordingly, we reverse the Board.

### ORDER

AND NOW, this 22nd day of February, 2011, the March 17, 2010, order of the Workers' Compensation Appeal Board is REVERSED.

DISSENTING OPINION BY Senior Judge FRIEDMAN.

I respectfully dissent. In reversing the decisions of both the Workers' Compensation Appeal Board and the workers' compensation judge (WCJ), the majority holds that, although Claimant was injured when he jumped down a flight of stairs on his employer's premises while going to lunch at an employer-run cafeteria, where Claimant had an employer-sponsored meal plan, Claimant was not acting in furtherance of his employer's business or affairs. I cannot agree.

This court has held that breaks that allow an employee to administer to his personal comfort are considered to be in furtherance of the employer's business because they better enable the employee to perform his job. *U.S. Airways v. Workers' Compensation Appeal Board (Dixon)*, 764 A.2d 635, 642 (Pa.Cmwlth.2000). Also, in determining whether an employee is furthering an employer's business, this court will consider whether the employer encourages the employee's participation in an employer-sponsored activity. *Pinn v. Workers' Compensation Appeal Board (Hemlock Girl Scout Council)*, 754 A.2d 40, 43 (Pa.Cmwlth.2000).

Here, the record shows that Claimant had thirty minutes for his lunch break,

---

7. Claimant likens his actions to those in cases where a claimant is injured during an inconsequential departure from his work duties. Here, the facts are far different than those where a claimant is injured while performing a spontaneous act and receives benefits, such as in *Baby's Room*, a case Claimant relies upon. In *Baby's Room*, the claimant was finishing a delivery of furniture to a residence when he spontaneously jumped up to touch a basketball rim and fell backwards, hit his head on the pavement, and suffered a traumatic brain injury. *Baby's Room*, 860 A.2d at 204. This Court upheld the award of workers' compensation benefits and concluded that the claimant's actions constituted an "interval of leisure" and were an inconsequential departure from delivering furniture for his employer. *Id.* In *Baby's Room*, the claimant's spontaneous act was truly whimsical and involved very little risk of injury, unlike the facts established in this case where Claimant contemplated the likelihood of a successful jump for some time before he performed the deliberate and inherently high-risk act.

8. The Pennsylvania Supreme Court has recognized the remedial nature of the Act and, specifically, that the Act is intended to benefit workers, and that its provisions must be construed to effectuate their humanitarian objective. *Lehigh County Vo–Tech Sch. v. Workmen's Comp. Appeal Bd. (Wolfe)*, 539 Pa. 322, 327, 652 A.2d 797, 799 (1995). The Pennsylvania Supreme Court has cautioned, however, that we must be mindful that the Act is never intended to make the employer an insurer of the safety of all employees. *Ginther v. J.P. Graham Transfer Co.*, 348 Pa. 60, 63, 33 A.2d 923, 924 (1943).

9. Because we conclude that Claimant was not in the course and scope of his employment at the time of his injury, we need not address whether Claimant's injury was self inflicted such that denial of benefits is appropriate under Section 301(a) of the Law, 77 P.S. § 431, or the remaining arguments regarding Employer's asserted affirmative defense.

and, whenever he went to lunch on his employer's premises at the employer-run cafeteria, using the employer-sponsored meal plan, Claimant was not required to "punch out" or "clock out at the time clock." (N.T., 9/11/07, at 12, 24; R.R. at 35, 47.) If Claimant ever decided to leave his employer's premises for lunch, Claimant had to "clock out at the time clock and then clock back in a half hour later." (*Id.* at 12, 26; R.R. at 35, 49.) In other words, Claimant's employer set up an on-premises lunch program for employees in order to encourage employees to remain on the employer's premises for the thirty-minute lunch period. The employer obviously believed that employees would be better able to perform their job duties if they did not rush somewhere else for lunch. Thus, I submit that, inasmuch as Claimant was participating in an employer-sponsored, on-premises lunch program when he was injured, Claimant was furthering his employer's business.

Accordingly, unlike the majority, I would affirm.