PIPELINE SYSTEMS, INC. and
Continental Western Insurance
Company, Petitioners

v.

WORKERS' COMPENSATION
APPEAL BOARD (POUNDS),
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 1, 2015.

Decided July 7, 2015.

Reargument En Banc and
Reconsideration Denied
Aug. 20, 2015.

Audrey J. Copeland, King of Prussia, for petitioner.

Kathleen J. Hayne Robertson, New Castle, for respondent.

BEFORE: DAN PELLEGRINI, President Judge, and P. KEVIN BROBSON, Judge, and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Senior Judge JAMES GARDNER COLINS.

Pipeline Systems, Inc. (Employer) and Continental Western Insurance Company petition for review of the August 5, 2014 order of the Workers' Compensation Appeal Board (Board) affirming the April 4, 2012 interlocutory decision and order, the September 27, 2012 decision and order, and the October 2, 2012 amended decision issued by the Workers' Compensation Judge (WCJ). Before this Court, Employer argues that the WCJ erred in concluding that Franklin Pound (Claimant) was within the course and scope of his employment under the Workers' Compensation Act [1] (Act) when he injured his left leg, knee, foot, ribs, back, head and lungs.

The facts in the instant matter are not in dispute. The question before this Court is whether the circumstances giving rise to Claimant's injury demonstrate that Claimant's injury was in the course of and causally related to his employment, thereby defining his injury as work-related and within the ambit of the Act. *Penn State University v. Workers' Compensation Appeal Board (Smith)*, 15 A.3d 949, 952 (Pa. Cmwlth.2011).

Employer obtained a contract to install a new addition to the Sewickley Borough Sanitation Department Plant (Borough Plant), which included the installation of pipelines and manholes. (Record Item (R. Item) 4, April 4, 2012 WCJ Interlocutory Decision, Testimony & Evidence ¶ 1 (4/4/12 WCJ Decision, T. & E. ¶ 1); March 11, 2011 Hearing Transcript (3/11/2011 H.T.) at 14, 17–18, 47, 54.) [2] In January 2010,

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2708.

2. The facts in this matter are based solely on Claimant's testimony, which the WCJ found credible and accepted. (R. Item 4, April 4, 2012 WCJ Decision, Findings of Fact ¶ 1.) Employer argues that the WCJ failed to satisfy the reasoned decision requirement of Section 422(a) of the Act, or rely on substantial evidence; however, in making this argument, Employer repeatedly admits that the facts are undisputed and argues that the WCJ should have reached the legal conclusion that Claimant was not in the course of his employment at the time of his injury. (*See* Employer's Brief at 7, 28, 32, 41, 43.) We agree with Employer that the WCJ's decision was structured in an unorthodox manner. In a section of the WCJ's April 4, 2012 interlocutory decision titled "Testimony and Evidence," the WCJ intermingled his discussion of the facts with his discussion of Claimant's and Employer's arguments concerning the import of those facts. (R. Item 4, April 4, 2012 WCJ Decision, Testimony & Evidence.) The WCJ

Claimant began working on the Borough Plant job site for Employer. (4/4/12 WCJ Decision, T. & E. ¶ 1; 3/11/2011 H.T. at 18, 51.) The Borough Plant job site contained a concrete pit with a ladder attached to the side. (4/4/12 WCJ Decision, T. & E. ¶ 1; 3/11/2011 H.T. at 19–20, 48.) Prior to July 2010, Claimant had performed work in the pit for Employer. (4/4/12 WCJ Decision, T. & E. ¶ 1; 3/11/2011 H.T. at 24–25, 48, 51.)

On July 29, 2010, Claimant and three fellow employees of Employer were at the Borough Plant installing new pipeline in an area located approximately thirty feet away from the concrete pit. (4/4/12 WCJ Decision, T. & E. ¶ 1; 3/11/2011 H.T. at 19–20, 48.) Claimant heard an employee of the Borough Plant call out for help, ". . . man down. Jack fell," and Claimant and two of Claimant's coworkers rushed to the area of the pit to provide assistance. (4/4/12 WCJ Decision, T. & E. ¶ 1; 3/11/2011 H.T. at 20, 24, 48, 57.) Once there, Claimant discovered that a Borough Plant employee was lying at the bottom of the pit. (4/4/12 WCJ Decision, T. & E. ¶ 1; 3/11/2011 H.T. at 19.) Claimant, along with Dennis, the Borough Plant Manager, and Sean, an inspector with an engineering company on the job site, descended the ladder in an effort to assist the Borough Plant employee. (4/4/12 WCJ Decision, T. & E. ¶ 1; 3/11/2011 H.T. at 21, 49.) When Claimant finished descending the ladder, Claimant examined the Borough Plant employee and indicated to the others that

Claimant "knew he was gone." (4/4/12 WCJ Decision, T. & E. ¶ 1; 3/11/2011 H.T. at 21.)

Claimant testified that when he stood up, he felt as though the breath was being sucked out of him, and he knew that something was wrong. (4/4/12 WCJ Decision, T. & E. ¶ 1; 3/11/2011 H.T. at 21–22.) Claimant tried to climb out of the pit, but lost consciousness before he could reach the top of the ladder and fell approximately 20 feet to the bottom of the pit. (4/4/12 WCJ Decision, T. & E. ¶ 1; 3/11/2011 H.T. at 21–22.) Claimant's co-employees determined that there was gas in the pit and they responded by pumping fresh air into the pit utilizing a fresh air machine owned by Employer. (4/4/12 WCJ Decision, T. & E. ¶ 1; 3/11/2011 H.T. at 22–23, 50, 56.) Claimant was hospitalized and subsequently learned that there had been methane gas in the pit. (4/4/12 WCJ Decision, T. & E. ¶ 1; 3/11/2011 H.T. at 23.) It was Claimant's recollection that he had not been warned about any methane gases in the pit. (4/4/12 WCJ Decision, T. & E. ¶ 1; 3/11/2011 H.T. at 23.) Claimant also stated that no one from the Borough Plant or elsewhere warned him not to go into the pit when he did. (4/4/12 WCJ Decision, T. & E. ¶ 1, 3/11/2011 H.T. at 23, 57–58.)

On August 11, 2010, a Notice of Temporary Compensation Payable was issued establishing Claimant's average weekly wage at the time of injury and a corresponding total temporary disability rate. (3/11/2011

then adopted and incorporated the factual discussion from the Testimony and Evidence section of his decision in his Findings of Fact, rather than repeating his findings in specifically numbered paragraphs. (*Id.*, Findings of Fact.) Nevertheless, the decision specified the evidence relied upon, stated the reason for accepting it, and explained the rationale behind the decision, thereby satisfying the reasoned decision requirement of Section 422(a) of the Act, 77 P.S. § 834; *compare Daniels v.*

*Workers' Compensation Appeal Board (Tristate Transport)*, 574 Pa. 61, 828 A.2d 1043, 1053–1054 (2003). In addition, the WCJ's findings were based on substantial evidence: Claimant's undisputed credible testimony. *See, e.g., Community Empowerment Association v. Workers' Compensation Appeal Board (Porch)*, 962 A.2d 1, 7–8 (Pa.Cmwlth.2008); *Waldameer Park, Inc. v. Workers' Compensation Appeal Board (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth.2003).

H.T. at 6, Claimant Exhibit 2–Bureau Documents.) On October 14, 2010, Employer issued a Notice Stopping Temporary Compensation and a Notice of Denial. (*Id.*) On October 27, 2010, Claimant filed a Claim Petition listing injuries to his left leg, knee, foot, ribs, back and lungs. (R. Item 1.) On November 19, 2010, Employer filed an Answer to the Claim Petition denying that Claimant was within the course and scope of employment when he was injured. (R. Item 3.) Claimant and Employer agreed to have the issue of whether Claimant was within the course and scope of his employment when his injuries occurred bifurcated for an initial determination and, following the March 11, 2011 hearing where Claimant testified, the WCJ issued an interlocutory decision and order on April 4, 2012, concluding that Claimant was within the course and scope of employment. (R. Item 4.) On September 27, 2012 the WCJ issued a decision and order granting Claimant's Claim Petition and on October 2, 2012, the WCJ issued an amended decision with supplemental findings of fact concerning Claimant's injuries and counsel fees. (R. Items 6, 8.) Employer appealed to the Board and the Board affirmed the WCJ in an August 5, 2014 decision and order. (R. Item 13.) Employer petitioned this Court for review.

■■■ This Court's review of an order of the Board is limited to determining whether the WCJ's findings of fact are supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Bufford v. Workers' Compensation Appeal Board (North American Telecom)*, 606 Pa. 621, 2 A.3d 548, 551 (2010). Whether a claimant's injuries arose within the course of employment as defined by the Act is a question of law to be determined based upon the findings of fact. *Hoffman v. Workers' Compensation Appeal Board (Westmoreland Hospital)*, 559 Pa. 655, 741 A.2d 1286, 1287 (1999). In examining this question, we must keep in mind that the Act "is remedial in nature and intended to benefit the worker, and, therefore, the Act must be liberally construed to effectuate its humanitarian objectives." *Peterson v. Workmen's Compensation Appeal Board (PRN Nursing Agency)*, 528 Pa. 279, 597 A.2d 1116, 1120 (1991). We must also keep in mind that it is the claimant who bears the burden of proving all elements necessary to support an award of workers' compensation benefits. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 535 Pa. 135, 634 A.2d 592, 595 (1993); *Lewis v. Workers' Compensation Appeal Board (Andy Frain Services, Inc.)*, 29 A.3d 851, 861 (Pa.Cmwlth.2011).

■■■ Section 301(c) of the Act provides that the term "injury arising in the course of employment" includes injuries sustained in furtherance of the business or affairs of the employer, as well as other injuries which occur on premises occupied or controlled by the employer. Section 301(c)(1) of the Act, 77 P.S. § 411. The courts have developed two tests that are used to determine whether an injury was sustained in the course of employment. Under the first test, the question is whether the employee was actually engaged in the furtherance of the employer's business or affairs, regardless of whether the employee was upon the employer's premises. *Kmart Corporation v. Workers' Compensation Appeal Board (Fitzsimmons)*, 561 Pa. 111, 748 A.2d 660, 664 (2000); *Marazas v. Workers' Compensation Appeal Board (Vitas Healthcare Corporation)*, 97 A.3d 854, 862 (Pa.Cmwlth.2014). Under the second test, the employee need not be engaged in the furtherance of the employer's business or affairs, however, the employee: (1) must be on the premises occu-

pied or under the control of the employer, or upon which the employer's business or affairs are being carried on; (2) must be required by the nature of his employment to be present on the premises; and (3) must sustain injuries caused by the condition of the premises or by operation of the employer's business or affairs thereon. *Kmart,* 748 A.2d at 664; *Marazas,* 97 A.3d at 862.

In *Kmart,* a claimant who was eating lunch during her break in a public restaurant on employer's premises suffered posttraumatic stress disorder as a result of witnessing and coming to the aid of a coworker who was the victim of a knife attack while also in the restaurant. 748 A.2d at 661–62. Examining the facts, our Supreme Court made several legal conclusions that led it to hold that the claimant in *Kmart* did not suffer an injury that was encompassed by the Act. *Id.* at 667. First, the Court concluded that the claimant and her co-worker were off-duty and that an employee intervening in the assault of a co-worker while both were off-duty was "wholly foreign to her employment." *Id.* at 665. The Court also concluded that the claimant was not permitted to be on the premises at the time of the attack solely because of her employment, nor was she performing any duties related to her employment. *Id.* As a result of these conclusions, the Court held that the claimant failed to satisfy the first test in which an injury can be said to have occurred in the course of employment because the employee was not engaged in the furtherance of the employer's business or affairs. *Id.*

Next, the Court in *Kmart* examined whether claimant satisfied the three requirements necessary to demonstrate that she was injured within the course of employment, even though she was not engaged in the furtherance of employer's business or affairs at the time of injury.

*Id.* The Court noted that there was no dispute that claimant was on employer's premises at the time of the injury, but concluded that she was not required to be present by the nature of her employment. *Id.* In reaching the conclusion that claimant failed to satisfy the second prong of the test, the Court explicitly rejected the contention that claimant's presence became required once the stabbing occurred in order to provide aid for her coworker and rejected any asserted relevance to its analysis of the fact that the employees only had a relationship because of their employment. *Id.* at 666.

As a part of its holding in *Kmart,* the Court discussed the theory that an employer derives a benefit from the goodwill created by the employee rendering aid or assistance to another and that this goodwill may bring injuries incurred while rendering aid within the ambit of the Act. *Id.* at 666. Our Supreme Court explicitly rejected this theory and held that an award of benefits due to any tangential goodwill that may inure to the employer is impermissible under the Act. *Id.* at 666 & n. 4. Having concluded that claimant failed to demonstrate that either of the tests used to determine whether a claimant was within the course and scope of employment at the time of injury were satisfied, and having rejected the theory that tangential goodwill presumably derived by employer may provide a basis for coverage under the Act, the Court held that the claimant in *Kmart* was not within the course and scope of employment when she was injured and therefore she was ineligible to receive benefits under the Act. *Id.* at 667.

In 2003, following our Supreme Court's decision in *Kmart,* the General Assembly amended the Act in order to provide workers' compensation benefits for:

(10) An employe who, while in the course and scope of his employment,

goes to the aid of a person and suffers injury or death as a direct result of any of the following:

> (i) Preventing the commission of a crime, lawfully apprehending a person reasonably suspected of having committed a crime or aiding the victim of a crime. For purposes of this clause, the terms "crime" and "victim" shall have the same meanings as given to them in section 103 of the act of November 24, 1998 (P.L. 882, No. 111), known as the "Crime Victims Act."
> (ii) Rendering emergency care, first aid or rescue at the scene of an emergency.

Section 601(a)(10)(i)-(ii) of the Act, *added by* Act of December 23, 2003, P.L. 371, 77 P.S. § 1031(a)(10)(i, ii).

The General Assembly's amendment of Section 601(a) is at the heart of the dispute between the parties in the instant matter. The WCJ concluded that Section 601(a)(10)(ii) applied to Claimant and that Claimant's injuries were within the course and scope of his employment because he was attempting to rescue or render aid to the Borough Plant employee who had fallen into the pit. The Board affirmed and noted that Claimant was covered by the Act even though the WCJ found that "Claimant was not required to be at, in or near the pit into which he fell, and that the person he assisted was not a co-worker, and that [Employer] was not responsible for the pit or work being done in the pit on the day Claimant was injured." (R. Item 13, Board Decision at 3–4.)

Employer contends that the Board erred in interpreting Section 601(a)(10)(ii) to encompass all employees rather than a limited class of volunteer emergency personnel. Employer argues that even if Section 601(a)(10) is interpreted to encompass all employees, Section 601(a)(10) does not provide that an employee remains within the course of employment because an emergency arises and the employee renders aid. Employer contends that the facts here do not satisfy either of the tests used to determine whether an employee is in the course or scope of employment when the injury occurred. Employer argues that like the employee in *Kmart*, Claimant was not acting in furtherance of Employer's business interests and Claimant's compulsion to act as a "Good Samaritan"[3] was not employment-related.

■ Claimant argues that, unlike the claimant in *Kmart*, he was on-duty and actively engaged in the furtherance of Employer's business at the time the emergency situation arose and he went to render aid. Claimant contends that the text of Section 601(a)(10) makes clear that it applies to all employees who are within the course of employment at the time an emergency arises and that it is not a general provision applicable only to a limited class of emergency personnel. In addition, Claimant argues that Section 601(a)(10) is entirely consistent with *Kmart* because it neither removes an employee from being within the course of employment because of attempts to render aid in an emergency, nor places an employee within the scope of employment solely because of "Good Samaritan" acts. Claimant's argument is persuasive and is supported by the text, structure, and intent of Section 601(a), as well as the Act as a whole. Moreover, Claimant's interpretation is in accord with ample precedent addressing temporary departures from workplace duties that do not remove an employee from the course and scope of employment.

■ Generally, Section 601(a) expands the definition of "employe" used in the

---

**3.** *See, e.g.,* King James Bible, New Testament, Gospel of Luke, 10:25–37.

Act. 77 P.S. § 1031(a) ("In addition to those persons included within the definition of the word "employe" as defined in section 104 [4], 'employee' shall also include ..."). Subsections (1) to (9) of Section 601(a) are structured similarly, expanding the definition of "employe" to encompass classes of individuals defined by its terms, generally volunteers, who are charged with responding to emergency situations and are injured while doing so, including: (1) members of volunteer fire departments or volunteer fire companies; (2) members of volunteer ambulance corps; (3) members of volunteer rescue and lifesaving squads; (4) volunteer members of the State Parks and Forest Program; (5) Pennsylvania Deputy Game Protectors; (6) special waterways patrolmen; (7) forest firefighters; (8) volunteer members of hazardous response teams; and (9) local coordinators of emergency management. *See* 77 P.S. § 1031(a)(1–9); *Wolf v. Workers' Compensation Appeal Board (County of Berks/Office of Aging)*, 705 A.2d 483, 485–486 (Pa.Cmwlth.1997). The key questions utilized under subsections (1) to (9) of Section 601(a) to determine if a claimant's injuries are covered by the Act are (i) whether a claimant fits within the defined class, such as were they a volunteer firefighter, and (ii) whether the injury occurred during the performance of a duty related to the claimant's status as a member of that class, such as while engaged in actually fighting a fire. *See, e.g., Borough of Heidelberg v. Workers' Compensation Appeal Board (Selva)*, 593 Pa. 174, 928 A.2d 1006, 1011–1012 (2007); *Keiter v. Workmen's Compensation Appeals Board (Avondale Borough)*, 654 A.2d 629, 633–634 (Pa.Cmwlth.1995).

While similar in its logic and intent, subsection 601(a)(10) differs from the other subsections contained in Section 601(a) both in its structure and in the individuals to which it is targeted. In contrast to subsections 601(a)(1)-(9), subsection 601(a)(10) does not expand the definition of "employe" to include a class of individuals defined by its terms. 77 P.S. §§ 1204, 1031(a)(10). Instead, subsection 601(a)(10) begins with an "employe" as defined in Section 104. 77 P.S. §§ 1204, 1031(a)(10). Subsection 601(a)(10) then provides that an "employe" shall remain an "employe" under the Act if injured while performing specifically identified acts. 77 P.S. §§ 1204, 1031(a)(10). The acts identified by subsection 601(a)(10) are: (i) preventing the commission of a crime, lawfully apprehending a person reasonably suspected of having committed a crime or aiding the victim of a crime; and (ii) rendering emergency care, first aid or rescue at the scene of an emergency. 77 P.S. § 1031(a)(10)(i–ii). Under subsection 601(a)(10), an employee who "goes to" the aid of another by performing these specifically identified acts cannot be said to have

---

**4.** Section 104 defines the term "employe" under the Act:

The term 'employe', as used in this act, is declared to be synonymous with servant, and includes all natural persons who perform services, except agricultural services or domestic services performed in a private home, for another for a valuable consideration, exclusive of persons whose employment is casual in character and not in the regular course of the business of the employer and exclusive of persons to whom articles or materials are given out to be made up, cleaned, washed, altered, ornamented, finished, or repaired, or adapted for sale, in the worker's own home, or on other premises not under the control or management of the employer. Every executive officer of a corporation elected or appointed in accordance with the charter and by-laws of the corporation, except elected officers of the Commonwealth or any of its political subdivisions, shall be an employe of the corporation.

77 P.S. § 1204.

abandoned the course of employment or to have engaged in something wholly foreign thereto. 77 P.S. § 1031(a)(10); *compare Trigon Holdings, Inc. v. Workers' Compensation Appeal Board (Griffith),* 74 A.3d 359 (Pa.Cmwlth.2013) (injury sustained by claimant while polishing a bolt for his child's go-cart during a brief break from work was not compensable under the Act because it was a pronounced departure from his work responsibilities and, therefore, did not occur in the course and scope of employment). Like the other subsections of 601(a), the provision of coverage in subsection 601(a)(10) is rooted in the action being performed at the time of injury.

The acts identified in subsection 601(a)(10)(i)-(ii) do not relate to a duty performed by an employee because of an employee-employer relationship or because of membership in a defined class of emergency responders that does not fit within the definition of "employe"; if this were the case, the claimant would already be covered under the Act and subsection 601(a)(10) would be superfluous. 77 P.S. § 1031(a)(10)(i–ii); *see, e.g. Wetzel v. Workers' Compensation Appeal Board (Parkway Service Station),* 92 A.3d 130 (Pa.Cmwlth.2014) (claimant's injury was compensable under the Act because it occurred while claimant was attempting to prevent a thief from leaving employer's premises after an attempted robbery and claimant's job duties included securing the safety of fellow employees and patrons). Instead, subsection 601(a)(10) is focused on specific acts performed by an employee at a specific time. Subsection 601(a)(10) does not bring injuries incurred by an individual who aids another within the ambit of the Act simply because the individual is an employee. Rather, subsection 601(a)(10), by its plain language, requires that the individual is functioning as an employee at the time the emergency arises and the employee goes to the aid of

another. 77 P.S. § 1031(a)(10) ("An employe who, while in the course and scope of his employment, goes to the aid of a person . . . ."). With this requirement, subsection 601(a)(10) adheres to the logic of subsections 601(a)(1)-(9): volunteer emergency responders are not covered under the Act simply because they are volunteer emergency responders, but because the injury occurred while they were performing their duties as volunteer emergency responders and not while engaged in other endeavors; likewise, employees are not covered under the Act because they went to the aid of another person, but because they did so while otherwise within the course and scope of their employment. *Ginther v. J.P. Graham Transfer Company,* 348 Pa. 60, 33 A.2d 923, 924 (1943) ("The employer is not an insurer of the life and health of his employee; his liability for compensation is found only in the terms of [the Act]" (internal citations omitted)).

Subsections 601(a)(1)-(9) are concerned with placing those individuals who regularly perform emergency services within the definition of "employe" chiefly because the casual nature of or the lack of consideration for their services may otherwise exclude them. 77 P.S. § 1031(a)(1–9); *Ballerino v. Workers' Compensation Appeal Board (Darby Borough),* 938 A.2d 541, 546 & n. 8 (Pa.Cmwlth.2007). Subsection 601(a)(10) is charged with protecting employees who may render aid from being removed from the definition of "employe" chiefly because rendering aid is not a part of the services they regularly perform for consideration from their employer. 77 P.S. § 1031(a)(10). The logic and intent of each subsection of 601(a) is the same: to prevent workers who are injured while assisting persons in danger from being excluded from receiving workers' compensation benefits because they may not oth-

erwise fit within the Act at the exact time of injury.

An apt analogy is the different treatment given under the Act to an injury that is sustained by an employee while on a lunch break, compared to an injury that occurs while an employee is on a small temporary departure from work to tend to personal comforts or convenience; typically the former falls outside the ambit of the Act, while the latter is encompassed by the Act. *1912 Hoover House Restaurant v. Workers' Compensation Appeals Board (Soverns)*, 103 A.3d 441, 447–450 (Pa. Cmwlth.2014) (discussing the difference between an employee's comfort breaks and an employee's personal time, such as a lunch break); *see also Montgomery Hospital v. Workers' Compensation Appeal Board (Armstrong)*, 793 A.2d 182, 187–188 (Pa.Cmwlth.2002) (claimant's departure from the work routine to use the bathroom when injury occurred did not remove claimant from the course of employment); *Collins v. Workmen's Compensation Appeal Board (American Society for Testing and Materials)*, 99 Pa.Cmwlth. 228, 512 A.2d 1349, 1351 (1986) (injury sustained by claimant, who was a non-travelling employee, two blocks from employer's premises while she was returning from her lunch break was not compensable under the Act). The addition of subsection 601(a)(10) brings the acts of aiding another specifically identified by subparts (i) and (ii) into the category of actions that, like a temporary departure to administer to human comforts, do not constitute an abandonment of employment by an employee or constitute acts that are inherently high risk so as to be wholly foreign to employment. *Compare Penn State University*, 15 A.3d at 954 (claimant's act of jumping down a flight of the stairs while on a lunch break was wholly foreign to his employment); *Baby's Room v. Workers' Compensation Appeal Board (Stairs)*, 860 A.2d 200, 204–205 (Pa.Cmwlth.2004) (claimant's action of grabbing the rim of a basketball hoop in a customer's driveway was an inconsequential departure from his employment duty of delivering furniture for employer and, therefore, did not constitute a deviation from the course of employment).

Employer argues that the General Assembly could not have intended to provide coverage for employees who render aid but who are not members of a professional or specially trained class of emergency personnel, for to do so would be absurd. However, the text of Section 601(a) belies Employer's argument. 77 P.S. § 1031(a). Subsections 601(a)(1)-(9) demonstrate that when the General Assembly intends to limit coverage to a class of emergency responders with special training, it expressly does so. In subsection 601(a)(10), the General Assembly clearly chose not to limit its scope to members of a narrowly defined class with special training, instead utilizing the term "employe," which denotes no special training, in contrast to words like "members of volunteer fire departments," which do. 77 P.S. § 1031(a)(1) and (10).

Employer also argues that interpreting Section 601(a)(10) to apply to employees who act to provide aid to other persons without a corresponding employment duty runs contrary to our Supreme Court's decision in *Kmart*. In *Kmart*, the Supreme Court disapproved of reasoning that concluded "that an award of benefits is permissible because of the tangential goodwill that may inure to the employer," when an employee becomes injured while performing acts that could loosely be described as "Good Samaritan" in nature. 748 A.2d at 666 n. 4. Following our Supreme Court's decision in *Kmart*, the General Assembly amended Section 601(a) and added subsection 601(a)(10). *See* Act of December 23, 2003, P.L. 371, 77 P.S. § 1031(a)(10)(i, ii).

Therefore, it is the language of subsection 601(a)(10) and not our Supreme Court's analysis in *Kmart* that is controlling of the instant matter.

However, the language of the statute and the analysis in *Kmart* are not in conflict as Employer contends, as each reject the theory that it is the "tangential goodwill that may inure to an employer" which brings an injury directly resulting from amorphous "Good Samaritan" acts within the ambit of the statute. Instead of a tangential benefit or an amorphous category of acts, the statute, like the Court in *Kmart*, focuses on whether the employee is within the course and scope of employment when the employee "goes to" the aid of another person and whether that aid falls within two definite categories of assistance to another, and it is the answers to these questions that determines whether the injury is work-related.[5]

Similarly, in *Kmart* our Supreme Court rejected the theory that the claimant's actions were motivated by a work-related compulsion and nowhere does the statute state or imply that an employee's motivation in rendering assistance is pertinent to an analysis of whether injuries sustained while rendering aid are covered under the Act. Just as the Court did in *Kmart*, the statute does not place any relevance upon the relationship between the employee who is injured and the individual to whom the employee goes to aid; the statute simply requires that the employee goes to the aid of "a person." Section 601(a)(10) of the Act, 77 P.S. 1031(a)(10). Responding to a call for help by rendering aid is, like attending to personal comforts, a very human compulsion separate and apart from the work duties which engage our daily lives, but it is not a recognition of the best of our human instincts underlying the response that brings injuries sustained by an employee while rendering aid within the ambit of the Act; it is the text of the statute. Under subsection 601(a)(10), the key questions necessary to determine if a claimant's injuries are covered by the Act are (i) whether the individual is an employee within the meaning of the Act, (ii) whether the action taken by the employee falls within one of two specific categories of aid to another, and (iii) whether the employee acted as described in subsection 601(a)(10)(i)-(ii) while otherwise within the course and scope of employment. In order to determine whether the claimant was within the course and scope of employment at the point in time when the emergency arose and the employee went to the aid of another person, we must examine whether the claimant satisfied either of the two

---

**5.** Our Supreme Court noted in *Kmart* that while the claimant was not covered under the Act for her intervention in the assault upon her co-worker, "the legislature has provided means by which persons who intervene in a crime may recoup their financial losses. *See* Crime Victims Act, 18 P.S. § 11.701 *et seq.*" *Kmart*, 748 A.2d at 667 n. 5. In amending Section 601(a) to add subsection (10), the General Assembly provided in subpart (i) that "[p]reventing the commission of a crime, lawfully apprehending a person reasonably suspected of having committed a crime or aiding the victim of a crime," was one of the categories of acts that would not remove an employee from coverage under the Act. 77 P.S. § 1031(a)(10)(i). In drafting subpart (i) to subsection 601(a)(10), the General Assembly relied upon Section 103 of the Crime Victims Act, Act of November 24, 1998, P.L. 882, 18 § 11.103, to give meaning to the terms "crime" and "victim." 77 P.S. § 1031(a)(10)(i). The General Assembly's reliance on the definition section of the Crime Victims Act makes clear that the General Assembly was aware of the existence of this remedy when drafting the amendment to Section 601(a) of the Act and did not intend the Crime Victims Act to serve as the exclusive remedy for an employee who goes to the aid of a crime victim while in the course and scope of employment and is injured as a direct result.

tests developed under Section 301(c) of the Act.

In the instant matter, there is no dispute that Claimant was an employee of Employer whose duties included installing new pipeline at different job sites. Employer obtained a contract to construct a new addition to the Borough Plant, which included the installation of new pipeline. Claimant was sent by Employer to the Borough Plant to install new pipeline beginning in approximately January 2010. On July 29, 2010, Claimant heard a call for help from the area of the concrete pit, which was approximately thirty feet away from where Claimant was working. At the time Claimant heard the call for help, Claimant was installing pipe in performance of Employer's contract. Claimant and his co-workers responded to the call for help by quickly traversing the thirty feet between where they were working and the area of the pit. Claimant descended the ladder attached to the pit in order to rescue or provide aid to the person who lay at the bottom. Claimant found the man dead. Claimant attempted to ascend the ladder, but was overwhelmed by a lack of oxygen, and fell from the ladder back down into the pit, sustaining his injuries. These facts demonstrate that at the time the emergency arose, Claimant was actually engaged in the furtherance of Employer's business or affairs and was, therefore, within the course and scope of his employment. These facts further demonstrate that Claimant, in response to a call for help, went to the aid of another and sustained injuries as a result of attempting to render emergency care.

The question raised by Employer before this Court was whether Claimant's rendering of aid to the injured, and ultimately deceased, Borough Plant employee removed Claimant from the course and scope of his employment because his employment duties did not include rendering aid

to another. Our interpretation of the statute is that the question of whether Claimant was within the course and scope of employment is answered by an examination of whether, at the time Claimant heard the call for help, Claimant's activities satisfied one of the two tests already used under the Act to answer this question. Our interpretation of the statute necessarily requires the conclusion that attempts to render aid to another do not, in and of themselves, constitute an abandonment of employment. Having resolved this question, there remains no dispute that Claimant was within the course and scope of his employment at the time this tragedy occurred: he was 30 feet away installing pipe in accordance with Employer's contract with the Borough Plant.

Accordingly, we hold that Claimant is entitled to benefits under the Act for injuries to his left leg, knee, foot, ribs, back and lungs and we affirm the order of the Board.

### ORDER

AND NOW, this 7th day of July, 2015, the Order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby AFFIRMED.