J-A15039-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CASEY LUTJENS & STEPHANIE LUTJENS, HIS WIFE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : | |
| v. | : | |
| HEINZ BAYER, | : | |
| | : | No. 3165 EDA 2018 |
| Appellee | : | |

Appeal from the Order Entered September 28, 2018
In the Court of Common Pleas of Northampton County Civil Division at
No(s): CP-48-CV-2016-5543

BEFORE: BENDER, P.J.E., GANTMAN, P.J.E., and COLINS*, J.

MEMORANDUM BY COLINS, J.: **FILED AUGUST 27, 2019**

Before this Court is the appeal of Casey and Stephanie Lutjens (Appellants) from the order granting the motion of summary judgment brought by Heinz Bayer and dismissing Appellants' action against Bayer on the grounds that the action was barred by the exclusive remedy provision of Section 303(a) of the Workers' Compensation Act (WCA), 77 P.S. § 481(a). For the reasons set forth below, we affirm.

The facts regarding the incident that led to this lawsuit are not in dispute. On January 21, 2015, Casey Lutjens (Lutjens) was working as a screen printer at the worksite of his employer, General Medical Manufacturing, LLC (GMM), in a building in Bangor, Pennsylvania that Bayer personally owned

_____

* Retired Senior Judge assigned to the Superior Court.

(Building). During a scheduled afternoon break during his shift, Lutjens, along with Geraldine Hawk, another GMM employee, exited the Building onto the landing of the exterior wooden stairway. The landing was an area that was commonly used by GMM employees for breaks, and a cigarette "butt bucket" had been placed outside by GMM for the use of its employees. One or both of Lutjens and Hawk leaned against the railing on the landing, and the railing gave way, resulting in Lutjens and Hawk falling to the asphalt parking lot below. Both Lutjens and Hawk sustained serious injuries as a result of their fall, and each applied for workers' compensation benefits. By stipulations in the workers' compensation actions, GMM accepted their injuries as work related and agreed to pay wage-loss and medical benefits to Lutjens and Hawk.

Appellants instituted this action on June 22, 2016 by filing a complaint against Bayer in the trial court. Following preliminary objections, Appellants filed an amended complaint on August 5, 2016. In the amended complaint, Appellants alleged that the stairs, landing, and railing on the exterior of the Building were not properly built or maintained, resulting in the dangerous condition that led to Lutjens' injury. First Amended Complaint ¶¶4, 22. Appellants alleged that Bayer had actual knowledge of and failed to take proper action to remedy the dangerous condition. *Id.* ¶¶4, 6-9, 12, 22. The amended complaint alleges that Lutjens suffered various injuries as a result of his fall, including skull base fracture, subdural hemorrhage, severe head and brain trauma, rib fractures, chronic post-traumatic headaches, post-

concussion syndrome, longitudinal fracture of his left temporal bone, hearing and memory loss, balance issues, limitation of motion, and mental anguish and anxiety. *Id.* ¶¶6-8, 14. The amended complaint contains two claims of negligence against Bayer, one on behalf of Lutjens for his injuries and one on behalf of his wife, Stephanie Lutjens, for loss of consortium. *Id.* ¶¶22-28.

On September 29, 2016, Bayer filed an answer and new matter, and Appellants filed a reply to the new matter on October 12, 2016. On December 15, 2016, Appellants and Bayer stipulated to consolidate the instant action with a separate lawsuit brought by Hawk. On January 4, 2017, Appellants, Hawk, and Bayer entered into a stipulation authorizing Bayer to amend his new matter in which he could assert a defense that he was immune from suit under the exclusive remedy provision on the basis that he was Lutjens' and Hawk's employer under the WCA. Stipulation, 1/4/17, ¶¶8-9. Bayer filed his amended answer and new matter on January 20, 2017, and Appellants filed a reply on February 8, 2017.

On June 29, 2018, following the close of discovery, Bayer filed the instant summary judgment motion. In his motion, Bayer asserted that he was the sole shareholder and president of GMM and in that capacity he oversaw and controlled the operations of GMM. Summary Judgment Motion ¶6. Bayer further contended that there is no question that Lutjens' injury was work-related under the WCA, observing that Lutjens applied for and received workers' compensation benefits and the record establishes that the accident occurred during a scheduled, paid break in a location where employees

commonly congregated during their breaks.  *Id.* ¶¶8-13, 17-23.  Bayer thus argued that the suit brought by Lutjens against him is a claim by an employee against his employer seeking compensation for a workplace injury, which is barred by the exclusive remedy provision of the WCA.  *Id.* ¶¶15, 38.  Bayer further contended that he does not owe a separate duty to Lutjens on the basis that he was also the owner of the Building, as GMM's obligation to provide a safe workplace for its employees was identical to a building owner's obligation with respect to the safety of tenants.  *Id.* ¶¶24-32.

In their response, Appellants did not dispute that Lutjens was injured during the course of his work day, however they contended that Lutjens worked for GMM, not Bayer, and that he was not in the performance of his work duties for GMM when the accident occurred.  Response to Summary Judgment Motion ¶¶1, 5, 9, 16, 18, 20-22, 26, 29, 31, 38.  Appellants asserted that the landing where the injuries were sustained was part of the Building's common space that was shared with another tenant that also rented space in the Building and that the landing and wooden stairs also served as an entrance for customers and visitors to the Building.  *Id.* ¶¶7, 17, 22-23.  Because the injury occurred on the Building's common space, Appellants argued that Bayer owed Lutjens a separate duty as landlord that was distinct from any duty owed by GMM as Lutjens' employer.  *Id.* ¶¶15, 17, 24-27, 30-32, 38.  Appellants further contended that the evidence produced by Bayer did not demonstrate that he was in fact the owner of GMM, as deposition testimony established that Bayer only was present at GMM's offices a few hours per week and the

management was largely overseen by other individuals, and no evidence had been submitted to conclusively establish Bayer's ownership interest in GMM. *Id.* ¶¶6, 12, 27-29.

On September 28, 2018, the trial court entered an order granting Bayer's summary judgment motion. In the statement of reasons accompanying the order, the trial court determined that the fact that Lutjens and Hawk were on a break did not alter the conclusion that their injuries were compensable under the WCA, noting that in ***1912 Hoover House Restaurant v. Workers' Compensation Appeal Board (Soverns)***, 103 A.3d 441 (Pa. Cmwlth. 2014), a claimant who was injured while taking a smoke break was nevertheless awarded workers' compensation benefits. Order, 9/28/18, Statement of Reasons ¶8. Next, the trial court concluded that the evidence showed that Bayer was Lutjens' and Hawk's employer based on the evidence marshalled by the parties. ***Id.*** ¶9. Finally, the trial court rejected any application of the "dual capacity" exception to the exclusive remedy bar to common law actions against an employer, noting that Lutjens and Hawk remained in the course and scope of their employment as they were on a regularly scheduled break and on the premises when the injuries occurred. ***Id.*** ¶¶11-13. Appellants filed a timely notice of appeal of the trial

court's order.[1]  Hawk did not appeal the order, and she is not participating in this appeal.[2]

Appellants present the following questions for our review on appeal:

1. Did the trial court err in granting [Bayer]'s Motion for Summary Judgment and finding that [Appellants'] claims were barred by the [WCA] when a genuine issue of material fact exists as to whether [Bayer] was Casey Lutjens' employer at the time of the incident?

2. In the event the Defendant is determined to be Casey Lutjens' employer, did the trial court err in finding that [Appellants'] claims do not fall within the "dual capacity" exception to [WCA] immunity as a matter of law when evidence exists that Casey was not engaged in the performance of his job-related duties at the time of the incident, the incident did not occur on GMM's premises, and [Bayer] occupied a second capacity as property owner and landlord which conferred on him a duty to maintain the common exterior area where the incident occurred independent of any obligations imposed upon him as the employer?

Appellants' Brief at 5 (trial court disposition omitted).

Appellate review of a summary judgment ruling entails a question of law, and therefore our standard of review of the trial court's grant of summary judgment is *de novo* and the scope of review is plenary. ***Starling v. Lake Meade Property Owners Association, Inc.***, 162 A.3d 327, 340 (Pa. 2017); ***Pyeritz v. Commonwealth***, 32 A.3d 687, 692 (Pa. 2011). Our Supreme

---

[1] Appellants filed their statements of errors complained of on appeal on November 20, 2018. On December 5, 2018, the trial court entered a statement in lieu of opinion, in which it indicated that it was relying on the reasons stated in its earlier order granting summary judgment.

[2] According to a November 21, 2018 letter submitted to this Court by Hawk's counsel, Hawk settled the case and filed a praecipe to settle, discontinue, and end the matter with the trial court.

Court has explained the legal standard for a court reviewing a summary judgment motion as follows:

> Summary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law . . . . The reviewing court must view the record in the light most favorable to the nonmoving party, resolving all doubts as to the existence of a genuine issue of material fact against the moving party. When the facts are so clear that reasonable minds cannot differ, a trial court may properly enter summary judgment.

*Starling*, 162 A.3d at 340 (citation omitted).

In their first issue, Appellants contend that the trial court erred in granting summary judgment in favor of Bayer because the evidence presented did not establish that Bayer was Lutjens' employer and he therefore could not avail himself of the exclusive remedy provision of the WCA. Appellants contend that Bayer and GMM held themselves out separately, with Bayer as the owner of the Building responsible for the maintenance of the structure, including its entrances and exits, and GMM as the legal entity that employed Lutjens, held a workers' compensation insurance policy, and paid Lutjens' benefits. Appellants further argue that Bayer did not establish that he was the sole member of GMM through documentary evidence showing his ownership interest in the LLC, relying solely on Bayer's oral assertion that he owned the company. Appellants contend that, to the contrary, the undisputed evidence shows that Bayer's role in the management of GMM was limited and that other managers were responsible for the day-to-day operations and management of GMM.

- 7 -

Section 303(a) of the WCA, the exclusive remedy provision, provides as follows:

> The liability of an employer under [the WCA] shall be exclusive and in place of any and all other liability to such employes, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death . . .

77 P.S. § 481(a). As this Court has explained, this provision "generally bars all common law suits against an employer, because the [WCA] is the exclusive remedy for injuries sustained when an individual is acting within the scope of his employment." *Neidert v. Charlie*, 143 A.3d 384, 388 (Pa. Super. 2016); *see also Soto v. Nabisco, Inc.,* 32 A.3d 787, 790 (Pa. Super. 2011). The exclusive remedy provision of the WCA

> reflects the historical quid pro quo between an employer and employee whereby the employer assumes liability without fault for a work-related injury, but is relieved of the possibility of a larger damage verdict in a common law action. The employee benefits from the expeditious payment of compensation, but forgoes recovery of some elements of damages.

*Alston v. St. Paul Insurance Cos.*, 612 A.2d 421, 424 (Pa. 1992).

It is undisputed that GMM, as Lutjens' legal employer and the party liable for his workers' compensation benefits, could claim the exclusive remedy bar of Section 303(a) to claim immunity in an action brought against it by Appellants. However, in this matter, Appellants brought suit, not against GMM, but rather Bayer. Thus, this appeal requires that we resolve the issue of whether Bayer individually is Lutjens' employer based on his sole ownership of and his role at GMM. The trial court found that the evidence established

that Bayer was Lutjens' employer and therefore the suit was barred by Section

303(a).[3]  Order, 9/28/18, Statement of Reasons ¶¶8-9.

_____

[3] The trial court also held that Bayer was immune from suit because he was Lutjens' coworker, appearing to invoke the co-employee immunity provision of Section 205 of the WCA, 77 P.S. § 72.  Order, 9/28/18, Statement of Reasons ¶¶8-9.  Bayer likewise argues on appeal that the trial court order granting summary judgment in his favor can be affirmed on the separate ground of co-employee immunity.  While it is arguable that Bayer, as a GMM manager, could be considered a co-employee of Appellant, *see* 77 P.S. § 22 (defining employee in WCA to include "every executive officer of a corporation elected or appointed in accordance with the charter and by-laws of the corporation"); *but see* David B. Torrey, et al., 6 West's Pennsylvania Practice, Workers' Compensation § 2.9 (3d ed.) ("A sole proprietor . . . cannot be at once both master and servant . . ."), co-employee immunity is not applicable in this matter.  Section 205 of the WCA provides:

> If disability or death is compensable under this act, a person shall not be liable to anyone at common law or otherwise on account of such disability or death for any act or omission occurring while such person was in the same employ as the person disabled or killed, except for intentional wrong.

77 P.S. § 72.  This immunity, however, applies only where the co-employee's liability is based on his conduct as a co-employee.  ***Employers Mutual Casualty Co. v. Boiler Erection and Repair Co.***, 964 A.2d 381, 390 n.6 (Pa. Super. 2008).

> [T]he mere fact that both parties held positions of employment with the same employer at the time of the accident is not sufficient to show that they were in the 'same employ' at the time of the accident.  Rather, **the act or omission must occur while both employees are in the performance of their duties as employees**.  In order to establish immunity under the [WCA], the defendant is required to establish that her act or omission occurred while she was in the 'same employ' as the plaintiff, that is, in the course of her performance of duties for the employer.

***Id.*** (quoting ***Bell v. Kater***, 943 A.2d 293, 297 (Pa. Super. 2008)) (quotation marks omitted; emphasis added).  Thus, even assuming that the evidence establishes that Bayer, as a GMM manager, is Lutjens' co-employee under the WCA, Appellants' complaint focuses on decisions Bayer made as the owner of

"[A] determination regarding the existence of an employer/employee relationship is a question of law that is determined on the unique facts of each case." ***Universal Am-Can, Ltd. v. Workers' Compensation Appeal Board (Minteer)***, 762 A.2d 328, 330–31 (Pa. 2000); ***see also JFC Temps, Inc. v. Workmen's Compensation Appeal Board (Lindsay)***, 680 A.2d 862, 864 (Pa. 1996). An employer is defined as synonymous with the term "master," and the right to control the work of another and the manner in which the work is performed are deemed the most relevant factors in determining whether an employer-employee relationship exists under the WCA. 77 P.S. § 21; ***Universal Am-Can***, 762 A.2d at 333; ***Gillingham v. Consol Energy, Inc.***, 51 A.3d 841, 855 (Pa. Super. 2012) ("A master is one who stands to another in such a relation that he not only controls the results of the work of that other, but also may direct the manner in which such work shall be done.") (citation omitted). "[I]t is the existence of the *right* to control that is significant, irrespective of whether the control is actually exercised." ***Universal Am-Can***, 762 A.2d at 333 (emphasis in original). An employer-employee relationship exists under the WCA "where the alleged employer possesses the right to select the employee; the right and power to discharge the employee; the power to direct manner of performance; and the power to control the employee." ***Schriver v. Workers' Compensation Appeal Board***

_____

the Building, and Bayer did not show that he was responsible for the condition of the wooden deck and landing pursuant to his duties as a GMM employee.

*(Department of Transportation)*, 176 A.3d 459, 463 n.11 (Pa. Cmwlth. 2017).

The precise issue of whether the individual owner of an LLC (or other business entity) can assume the LLC's status as an employer under the WCA and thus remain immune from common law suit brought by an injured employee has not been addressed by the appellate courts of this Commonwealth.[4]  The Pennsylvania Supreme Court, however, has addressed in two cases the analogous issue of whether an injured employee may sue at common law the parent or subsidiary corporation of the employee's corporate employer.  In the first of these cases, *Mohan v. Publicker Industries, Inc.*, 222 A.2d 876 (Pa. 1966), the husband of a woman who died while nominally employed by Publicker Industries brought a wrongful death and survivorship action against Publicker's subsidiary, Continental Distilling.  222 A.2d at 877. The Court determined that, even though the employee was receiving paychecks from Publicker and there were other formal indicia that Publicker was her employer, the work the employee performed was controlled by Continental and was done in Continental plants and therefore the "overwhelmingly meaningful factors reveal[] the right of control, which is the

---

[4] Contrary to Bayer's argument on appeal, *Neidert* does not establish that the owner of a company that employs an injured worker is an employer under the WCA, because in that case the plaintiff conceded that the defendant was immune from suit under the WCA as the plaintiff's co-employee.  143 A.3d at 386-87.  This Court thus did not address the issue of whether the defendant was also the plaintiff's employer under the WCA based on his ownership interest.

- 11 -

classic test of the master-servant relationship, to be in Continental." ***Id.*** at 878-79. Thus, the Court determined that Continental was entitled to the exclusivity remedy bar of the WCA. ***Id.*** at 879. The Court set forth the following test for future cases:

> in a situation wherein the issue is which of two corporations, one of which is a wholly-owned subsidiary of the other, is the employer of an injured employee, ...the courts must analyze the issue of control in terms of function in order to determine for which corporation an employee in reality works. In other words, where there is established a parent[-]subsidiary relationship between corporations operating as separate entities and engaged in the performance of different functions, the proper manner by which the question of which corporation has the right of control over a certain employee should be determined is to focus on the functions performed by each corporation and by the employee.

***Id.***

Following ***Mohan***, in ***Kiehl v. Action Manufacturing Co.***, 535 A.2d 571 (Pa. 1987), two injured workers at a munitions factory sued in tort the parent corporation, which operated four munitions factories, rather than their direct employer, which the parent had formed to operate the specific factory in which the employees worked. ***Id.*** at 571-72. The Court determined that the trial court erred in solely looking to the WCA's traditional master-servant analysis and that, pursuant to ***Mohan***, an analysis of the functions performed by the parent and subsidiary was required before proceeding to the traditional control test. ***Id.*** at 573. The Court emphasized that under the functional analysis of ***Mohan***, the fact that a certain entity pays the injured employee and other superficial indicia of the employment relationship is not dispositive

of which party is in fact the employer under the WCA. *Id.* at 574. Applying *Mohan*, the Court found that the two corporations had distinct operational functions as the parent had formed the subsidiary in order to operate a factory with a different function from the other factories that the parent owned and ran. *Id.* Furthermore, the Court noted that the injured workers reported to work at the subsidiary, produced detonators for the subsidiary, operated machinery owned by the subsidiary, and were under the direct supervision of the subsidiary's management. *Id.* The Court thus rejected the parent corporation's argument that the two companies were a single entity "as an attempt to 'pierce the corporate veil' which it has carefully erected by forming [the subsidiary] as a separate corporation," stating that allowing the parent to invoke the exclusive remedy bar "would permit a parent company to assert itself as an immune unit if sued by an employee of any of its subsidiaries for [independent] acts of negligence, and project itself as a separate entity if sued by a member of the general public for the same conduct." *Id.* at 574-75.

In this case, there is no dispute that Bayer was the principal manager at GMM with the power to act on behalf of the company, hire and fire GMM employees, overrule other managers, and interact with customers. Summary Judgment Motion, Ex. C, Bayer Dep. at 49, 51; *id.*, E, Lutjens Dep. at 18-19, 68-69, 139; *id.*, Ex. G, Hawk Dep. at 15-16, 21, 37-39; Response to Summary Judgment Motion, Ex. C, Bayer Dep. at 136-37. Lutjens admitted during his deposition that he viewed Bayer as the "big boss" with the "final say on all issues relative to the company." Summary Judgment Motion, Ex. E, Lutjens

Dep. at 68-69. Furthermore, Bayer presented unrefuted evidence that he owned all of the membership interest in GMM and that he served as the president of the company. Summary Judgment Motion, Ex. C, Bayer Dep. at 49, 51. Appellants did not present any evidence that contradicted this testimony.[5]

In addition to his role at GMM, Bayer personally owned the Building. Summary Judgment Motion, Ex. C, Bayer Dep. at 49-51. Bayer personally insured the Building and GMM paid him rent for a portion of the Building. Response to Summary Judgment Motion, Ex. J, General Liability Policy; *id.*, Ex. L, GMM & Bayer Federal Income Tax Returns. Though GMM was the primary tenant of the Building, Bayer also leased a portion of the Building to another company, Windjammer, which paid him rent personally, and Bayer used another portion of the Building for a separate business venture of his called Lace Wing Fashion Design. *Id.*, Ex. F, Mary Catherine Pinkerton Dep. at 28-29; *id.*, Ex. L, Windjammer 1099 Forms.

---

[5] Appellants argue, under the rule established in ***Borough of Nanty-Glo v. American Surety Company of New York***, 163 A. 523 (Pa. 1932), that the trial court erred in relying upon the testimonial evidence submitted by Bayer in granting summary judgment in his favor when issues of witness credibility and weight are properly reserved for the fact-finder at trial. Appellants, however, did not raise any objection based on ***Nanty-Glo*** in their opposition to Bayer's summary judgment motion or in their statement of errors complained of on appeal. This contention is thus waived. Pa.R.A.P. 1925(b)(4)(vii); ***Lineberger v. Wyeth***, 894 A.2d 141, 143 (Pa. Super. 2006) (***Nanty-Glo*** argument raised for the first time on appeal is waived).

We agree with the trial court's conclusion that Bayer was Lutjens' "employer" under the WCA's traditional test of an employment relationship under the WCA because he had the power to hire, fire, and direct the activities of GMM employees. Furthermore, under the analysis set forth by our Supreme Court in **Mohan** and **Kiehl**, Bayer functionally served as Lutjens' employer. While, as Appellants note, Bayer was only present for limited hours at the GMM worksite and other GMM managers performed the day-to-day supervision of GMM's employees and operations, **see** Response to Summary Judgment Motion, Ex. C, Bayer Dep. at 135-38, Bayer's delegation of a portion of the management of GMM to others is not contrary to the conclusion that Bayer was the "big boss" of GMM with the power to direct the activities of GMM employees and hire and fire employees. Similarly, the fact that Bayer owned the Building and sublet portions of the Building to other tenants does not contradict that he also was Lutjens' employer under the WCA and therefore was immune to tort suit.

In their second issue, Appellants argue that, even if Bayer is Lutjens' employer under the WCA, Bayer also occupied a separate role as the owner of the Building and therefore Appellants can still recover against him pursuant to the "dual capacity" exception to the exclusive remedy bar. Appellants assert that Lutjens was not performing work for GMM or on the GMM worksite when he was injured and he was injured while in a common area of the Building that also served as an entrance for the general public and other tenants. Appellants further contend that Bayer had a clear duty as a

commercial landlord to members of the general public and his tenants to ensure that no unsafe conditions were present, and that Bayer's duties as landlord were separate and distinct from his role at GMM.

"Under the [dual capacity] doctrine, an employer, who is normally shielded from tort liability by the exclusive character of workers' compensation remedies, may become liable in tort to his employee if he occupies, in addition to his capacity as an employer, a second capacity that confers on him obligations independent of those imposed on employers." *Gresik v. PA Partners, L.P.*, 33 A.3d 594, 599 n.7 (Pa. 2011); *see also Neidert*, 143 A.3d at 388. It is generally recognized, however, that the dual capacity doctrine has limited application in Pennsylvania, as this Court has generally taken an "unfavorable view" of the dual capacity doctrine. *Neidert*, 143 A.3d at 388; *see also Soto*, 32 A.3d at 791.

Our Supreme Court has found that the dual capacity doctrine operated as an exception to the exclusive remedy bar in only one case, *Tatrai v. Presbyterian University Hospital*, 439 A.2d 1162 (Pa. 1982). In *Tatrai*, an operating room technician at a hospital became ill during work and she went to the emergency room of the hospital for treatment. *Id.* at 1163. When the technician was placed on an x-ray table, the foot-stand of the table broke and the technician was injured as she fell to the floor. *Id.* The majority opinion of Justice Nix concluded that the injury was not within the course of employment because the incident was "an event totally extraneous to the employment scheme." *Id.* at 1165. Further, the majority determined that

the fact that the injury occurred on the premises did not alter the conclusion that the injury was not exclusively compensable under the WCA because the technician's visit to the emergency room was not in furtherance of the affairs of her employer and not required by reason of employment. *Id.* at 1165-66. The concurrence of Justice Roberts, which drew the joinder of three other justices, agreed with the majority but on the separate basis that the hospital did not have an employer-employee relationship with the technician at the time of the injury but rather a hospital-patient relationship with an entirely distinct set of obligations. *Id.* at 1166-67.

Following *Tatrai*, the Supreme Court adopted the rule advocated by the concurrence, holding that the dual capacity exception is applicable where the employer and employee interact in such a way that the employer owes a different duty to the employee than arises through the employment relationship. *Lewis v. School District of Philadelphia*, 538 A.2d 862, 869 (Pa. 1988); *Budzichowski v. Bell Telephone Company of Pennsylvania*, 469 A.2d 111, 114-15 (Pa. 1983). However, the Court also emphasized, in accordance with the majority opinion in *Tatrai*, that the dual capacity exception has no application where "the employee's compensable injury occurred while he was actually engaged in the performance of his job." *Lewis*, 538 A.2d at 869; *see also Heath v. Church's Fried Chicken, Inc.*, 546 A.2d 1120, 1121 (Pa. 1988); *Snyder v. Pocono Medical Center*, 656 A.2d 534, 537 (Pa. Super. 1995), *aff'd,* 690 A.2d 1152 (Pa. 1997).

This Court most recently addressed the application of the dual capacity exception in **Neidert**. In that case, the plaintiff was injured using a trap door in the floor of a bar in which he was employed; the plaintiff was awarded workers' compensation benefits, but he also sued the defendant, who was the plaintiff's supervisor, and who also owned the building in which the bar was located and all of the stock in the company that operated the bar. 143 A.3d at 386. The plaintiff did not dispute that the defendant was plaintiff's supervisor and owned his employer, but argued that his suit was permitted under the dual capacity exception because the defendant also owned the building where the injury occurred. **Id.** at 387, 389. This Court observed that the operation of the trap door was part of the plaintiff's job duties, for which he had received safety instructions from the defendant. **Id.** at 389-90. As there was no dispute that the plaintiff was injured while engaged in the performance of his job, we concluded that the injury was not "an event totally extraneous to the employment scheme" and therefore the dual capacity exception did not apply. **Id.** at 390 (quoting **Tatrai**, 439 A.2d at 1165).

We conclude that the trial court correctly determined that the dual capacity exception is inapt here. First, Appellants are estopped from contending in the present proceeding that Lutjens' injury was totally extraneous to the employment scheme because he was not in the course and scope of his employment when injured. Under the doctrine of judicial

estoppel,[6] "a party to an action is estopped from assuming a position inconsistent with his or her assertion in a previous action, if his or her contention was successfully maintained." ***Bienert v. Bienert***, 168 A.3d 248, 255 (Pa. Super. 2017) (citations omitted). As noted above, Lutjens entered into a stipulation with GMM in the workers' compensation proceeding, in which the parties agreed that he was "injured in the course and scope of his employment with" GMM.[7] Summary Judgment Motion, Ex. F, Stipulation ¶2. A workers' compensation judge granted Lutjens' claim petition in accordance with the stipulation and ordered Appellant to pay wage-loss and medical benefits. ***Id.***, Ex. F, Order; ***see also*** Response to Summary Judgment Motion ¶13. Lutjens' contention that his injury was in the course and scope of employment when injured was successfully maintained in the workers' compensation proceeding, and therefore, under the doctrine of judicial

_____

[6] Our Supreme Court has described judicial estoppel as "an equitable, judicially-created doctrine designed to protect the integrity of the courts by preventing litigants from 'playing fast and loose' with the judicial system by adopting whatever position suits the moment." ***Sunbeam Corp. v. Liberty Mutual Insurance Co.***, 781 A.2d 1189, 1192 (Pa. 2001) (citation omitted).

[7] We further note that Appellants pleaded in their complaint in the instant action that Lutjens was "in the course and scope of his employment with" GMM when the incident occurred. First Amended Complaint ¶7. A party may not contradict an admission in an earlier pleading; however, this rule applies only to a statement of fact, rather than a conclusion of law, made in a pleading. ***Cogley v. Duncan***, 32 A.3d 1288, 1292-93 (Pa. Super. 2011). As the issue of whether an appellant was injured in the course and scope of employment is a question of law, ***Wachs v. Workers' Compensation Appeal Board (American Office Systems)***, 888 A.2d 858, 862 (Pa. 2005), Appellants' allegation that Lutjens was acting in the course and scope of his employment when injured was not a binding admission.

estoppel, Lutjens may not assume a position inconsistent with his earlier contention in this proceeding. *See Black v. Labor Ready, Inc.*, 995 A.2d 875, 879 (Pa. Super. 2010) (holding that defendant was estopped from invoking the exclusive remedy bar where it had successfully maintained in an earlier workers' compensation proceeding that it was not the plaintiff's employer and therefore was not liable for the plaintiff's work injury).

Even if Appellants were not estopped from arguing that injury occurred outside the course and scope of employment, we would still find this argument unpersuasive. Under the WCA, an employee who is not actively engaged in the performance of his job duties at the time of his injuries may still be entitled to workers' compensation benefits if injured during "intervals of leisure within regular working hours of the working day . . . which allow the employee to administer to his personal comfort [to] better enable him to perform his job." *Starr Aviation v. Workers' Compensation Appeal Board (Colquitt)*, 155 A.3d 1156, 1160 (Pa. Cmwlth. 2017) (citation omitted); *see also 1912 Hoover House Restaurant*, 103 A.3d at 447. Thus, courts have determined that an employee will not be denied compensation when injured while engaging in such activities as cigarette breaks, using bathroom facilities, and brief periods of recreation during the course of a workday. *See, e.g., Dzikowska v. Superior Steel Co.*, 103 A. 351, 352 (Pa. 1918) (laborer who stepped out of the work area to have a cigarette and burned himself when the match he lit caused his apron to catch fire was appropriately awarded compensation under the WCA as a cigarette break was not an unreasonable

departure from the course of employment); ***1912 Hoover House Restaurant***, 103 A.3d at 448 (employee who was bitten by a dog while on an authorized cigarette break in an area designated for breaks outside of workplace was in the course and scope of employment); ***The Baby's Room v. Workers' Compensation Appeal Board (Stairs)***, 860 A.2d 200 (Pa. Cmwlth. 2004) (furniture delivery person who, upon completion of delivery and while walking back to truck, sustained injury by jumping and touching a basketball rim was in the course and scope of employment); ***Montgomery Hospital v. Workers' Compensation Appeal Board (Armstrong)***, 793 A.2d 182, 188 (Pa. Cmwlth. 2002) (employee who sustained injury while using bathroom at work was in the course and scope of employment).

In this case, Lutjens' injury incurred during an afternoon break that was provided to all GMM employees, occurred at the same time every day, lasted 10 to 15 minutes, and the employees remained on the clock during the break. Summary Judgment Motion, Ex. E, Lutjens Dep. at 32-33, 65; ***Id.***, Ex. G, Hawk Dep. at 22-26, 81; ***see also*** Answer and Amended New Matter ¶58; Reply to Answer and Amended New Matter ¶58. The wooden stairway where the incident occurred was commonly used for cigarette breaks with a designated butt bucket for the disposal of cigarette butts provided by GMM. ***Id.***, Ex. E, Lutjens Dep. at 65-67, 132, 139; ***Id.***, Ex. G, Hawk Dep. at 26, 77, 79. Moreover, as the entrance to the workplace, the wooden stairs and landing are considered part of the employer's premises under the WCA, even

though it was shared common space used by other tenants and guests.[8] ***Epler v. North American Rockwell Corp.***, 393 A.2d 1163, 1166-67 (Pa. 1978); ***Piedmont Airlines, Inc. v. Workers' Compensation Appeal Board (Watson)***, 194 A.3d 737, 740-41 (Pa. Cmwlth. 2018). Because Lutjens was injured while engaged in a short break from his work that had been expressly authorized by his employer to allow him to attend to his personal comfort, his injury occurred during the course and scope of his employment and was compensable under the WCA. ***See Starr Aviation***, 155 A.3d at 1159-60; ***1912 Hoover House Restaurant***, 103 A.3d at 448. Therefore, Lutjens' injury did not occur during "an event totally extraneous to the employment scheme," and the dual capacity exception has no application. ***Tatrai***, 439 A.2d at 1165; ***Neidert***, 143 A.3d at 390.[9]

---

[8] We note that this issue is not dispositive of the question of whether Lutjens' injury was compensable under the WCA because an injured employee may receive workers' compensation benefits where the employee is engaged in a short departure from work and the injury occurred off the employer's premises. ***Starr Aviation***, 155 A.3d at 1159.

[9] Appellants further argue that Lutjens was not injured during the course and scope of his employment because (1) the scheduled breaks were not mandated by GMM and he sometimes worked through the breaks, and (2) Bayer testified at his deposition that he informed GMM employees on one occasion that that they should not smoke on the landing and that congregating on the landing blocked the Building exit and presented a safety hazard. Response to Summary Judgment Motion, Ex. C., Bayer Dep. at 45-46. Both of these arguments lack merit. First, the issue here is not whether Lutjens worked through his breaks or was mandated to leave his work site at the time he was injured, but rather whether, at the time he was injured, he was engaged in an "interval[] of leisure within regular working hours . . . to administer to his personal comfort [to] better enable him to perform his job."

Moreover, Appellants' dual capacity argument also fails because Bayer, as the owner of the building, did not owe a distinct duty to Lutjens that was separate from his responsibility as an employer to maintain a safe workplace. Under the WCA, an employer is liable for injuries that occur on the employer's premises to employees in the course of their employment. 77 P.S. § 411(1); *Hoffman v. Workers' Compensation Appeal Board (Westmoreland Hospital)*, 741 A.2d 1286, 1288 (Pa. 1999) ("Thus, as [the claimant] was injured while present at [the e]mployer's premises in the course of her employment, she should have been afforded workers' compensation benefits."). While Bayer may have owed duties to his tenants or their invitees for dangerous or defective conditions on the leased premises, *see generally Cholewka v. Gelso*, 193 A.3d 1023, 1031 (Pa. Super. 2018), given Bayer's status as Lutjens' employer, these obligations would merely be duplicative of the obligations imposed on Bayer by the WCA relating to employees who sustain injuries during the course and scope of their employment.

---

*Starr Aviation*, 155 A.3d at 1160 (citation omitted). The evidence here establishes that an afternoon break was provided for such a purpose and that Lutjens was on such a break at the time he was injured. Second, a workers' compensation claim may be denied as outside the course of employment where the injured employee's actions violated a positive work order or rule, but only where the employer demonstrates that the injured employee actually knew of the order or rule. *Miller v. Workers' Compensation Appeal Board (Millard Refrigerated Services)*, 47 A.3d 206, 209 (Pa. Cmwlth. 2012). In this case, Bayer did not testify that he personally informed Lutjens that he could not stand on the landing, and Lutjens testified that he was never instructed to not stand on the landing and the only thing Bayer ever told the smokers on the landing was that they should put their cigarette butts in the butt bucket. Summary Judgment Motion, Ex. E, Lutjens Dep. at 131-32.

For the foregoing reasons, we conclude that the trial court properly concluded that Bayer was entitled to judgment as a matter of law and therefore granted summary judgment in his favor.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/27/19